THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v.
NELSON E. SPENCER, as Trustee in Bankruptcy of the
ALBION CIDER AND VINEGAR COMPANY et al., Appellants.

Cumulative penalties — will not be imposed for successive viola-
tions of a statute unless penalty is clearly prescribed for each
offense — violations of Agricultural Law prohibiting adultera-
tion of cider vinegar and the labeling of adulterated vinegar
as "pure cider vinegar" — when judgment for cumulative
penalties will be sustained.

Cumulative recoveries will not be permitted by the courts, in actions
brought to recover aggregated penalties for violations of prohibitory
laws, in the absence of such a definite statement by the legislature as
to leave its intention in that respect unmistakable.

The commissioner of agriculture on two occasions took samples marked
"New York State Pure Cider Vinegar" from fifteen separate barrels at
the factory of defendant.   In an action to recover penalties the referee
found that the vinegar was adulterated and labeled cider vinegar in
violation of sections 50 to 52 of the Agricultural Law (L. 1893, ch. 338),
and that defendant was liable to fifteen penalties under section 53
imposing a penalty for "each violation" of these provisions.   Held,
that while there were but two transactions as to violations of the law
with reference to adulteration, there were fifteen distinct violations of
section 52 prohibiting the marking or branding as or for cider vinegar
any package containing that which is not cider vinegar.
People v. Albion Cider & Vinegar Co., 133 App. Div. 865, affirmed.

(Argued January 16, 1911; decided February 14, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 9, 1909, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James M. E. O'Grady* for appellants. The court erred in giving judgment for more than one penalty. The judgment for fifteen penalties was cumulative and improper. (*Sturges* v. *Spofford,* 45 N. Y. 446; *People* v. *McDermott-Bunger Co.,* 38 Misc. Rep. 365; *People* v. *Wright,* 19 Misc. Rep. 135; *People* v. *Kellina,* 23 Misc. Rep. 134; *Cox* v. *Paul,* 175 N. Y. 328; *Whitaker* v. *Masterton,* 106 N. Y. 277; *Apothecary* v. *Jones,* L. R. [1 Q. B.] 89; *Washburn* v. *McInroy,* 7 Johns. 134; *Fisher* v. *N. Y. C. & H. R. R. R. Co.,* 46 N. Y. 644; *U. S. C. M. Co.* v. *Smith,* 116 App. Div. 15; *People* v. *Buell,* 85 App. Div. 141; *People* v. *Koster,* 50 Misc. Rep. 46; *People* v. *Sheriff,* 78 App. Div. 46.)

*Thomas C. Burke* and *Thomas Carmody* for respondent. The People are entitled to recover cumulative penalties in one action for violations of the Vinegar Statute. (*People* v. *N. F. Co.,* 75 App. Div. 11; 173 N. Y. 629.)

GRAY, J. This appeal is from the affirmance by the Appellate Division, in the fourth judicial department, of a judgment entered against the defendants for fifteen penalties of $100 each, adjudged to have been incurred by reason of violations of the Agricultural Law of the state. (Laws of 1893, chap. 338.) The affirmance below was by a divided court; the divergence in opinion being upon the question of the right of the People to recover aggregated, or cumulative, penalties. As to other questions, I think that they have been satisfactorily disposed of in the opinion of the Appellate Division and that we need, only, consider the one question of the penalties.

The Albion Cider & Vinegar Company, a domestic corpo-

ration, engaged in the manufacture and sale of vinegar, was charged in the complaint, in substance, with having manufactured and sold a compound "in imitation and semblance of cider vinegar made exclusively from pure apple juice," which was not pure cider vinegar, so made; which was colored "to deceptively imitate cider vinegar," and which was falsely branded "New York State, Pure Cider Vinegar." It was alleged that fifteen separate samples had been taken by the inspectors from separate barrels, so branded, which, after having been chemically analyzed, proved not to be pure cider vinegar, within the provisions of the statute as to that product. The statute, which was, thus, charged with having been violated, so far as material to be recited here, was as follows: "Section 50. Definition of adulterated vinegar.— All vinegar which contains any * * * ingredients injurious to health, or any artificial coloring matter * * * shall be deemed adulterated. The term, cider vinegar, when used in this article means vinegar made exclusively from pure apple juice. Section 51. Manufacture and sale of adulterated or imitation vinegar prohibited.— No person shall manufacture for sale, keep for sale or offer for sale: 1. Any adulterated vinegar. 2. Any vinegar or product in imitation or semblance of cider vinegar, which is not cider vinegar. * * * Section 52. Packages containing cider vinegar to be branded.— Every manufacturer or producer of cider vinegar shall plainly brand on the head of each cask, barrel, keg or other package containing such vinegar, his name and place of business and the words 'cider vinegar.' And no person shall mark or brand as or for cider vinegar any package containing that which is not cider vinegar."

Penalties were imposed for violations, in the following language of section 53: "Every person violating the provisions of this article shall forfeit and pay to the People of the State the sum of one hundred dollars for each violation."

Upon the trial of the action these facts appeared. On September 3, 1901, the assistant commissioner of agriculture, with his agents, went to the company's factory and took nine

samples from different barrels, in a lot of seventy-five bar-
rels, which were marked with the company's name and with
the words "New York State Pure Cider Vinegar." This lot
was about to be shipped to a purchaser in the state of Wis-
consin. On the 24th of September, 1901, special agents,
again, visited the factory and took six samples from different
barrels, in a lot of sixty-three barrels, which were standing
upon the floor and which were marked similarly to the pre-
vious lot. These various samples were taken and they were
subjected to chemical analyses, in accordance with the pro-
visions of the law. The referee, before whom the trial was
had, made separate findings as to each barrel, from which
there had been taken a sample by the state's agents. Each of
these findings was that the "defendant kept for sale one cer-
tain barrel of adulterated vinegar, as and for cider vinegar,
which had been theretofore manufactured for sale by said
defendants and which contained artificial coloring matter, was
a product in imitation or semblance of cider vinegar and
which was not made exclusively from pure apple juice, and
that said defendants marked, or branded  *  *  *  said cer-
tain barrel with the words 'New York State Pure Cider
Vinegar.' " There were fifteen of such findings and they
covered the fifteen barrels in the two lots, from which sepa-
rate samples had been taken. The referee found, as a con-
clusion of law, that the defendants had forfeited to the plain-
tiff fifteen penalties of $100 each and directed judgment
accordingly.

There was evidence to support the findings of the referee
and the only question, arising upon his determination, which
will be discussed, is whether this was a case in which aggre-
gated penalties could be recovered. The question of the
power of the legislature to prohibit the artificial coloring of
vinegar, and to declare an artificial coloring to be an adultera-
tion, was disposed of in *People* v. *Girard*, (145 N. Y. 105).
If the judgment for the fifteen penalties rested, solely, upon
the findings that the defendants had manufactured for sale
these fifteen barrels of adulterated vinegar, it would be erro-

neous. It would be incorrect to hold that the putting up of
each barrel, keg, or package, of adulterated vinegar had cre-
ated as many infractions of the statute, for each of which a
penalty could be recovered. We must look to the language
of the statute to see whether, and when, cumulative penalties
are permitted in actions of this character. In repeated
decisions, this court has refused to recognize a right to
recover them, unless clearly authorized. The theory of such
proscutions has been considered to be to administer a warn-
ing not to continue the acts complained of. Generally, the
purpose of the legislature will be sufficiently subserved,
when one violation, or one default, is recovered for, which
shall act as a deterrent upon continuing to disregard the
statute. (See *Sturgis* v. *Spofford*, 45 N. Y. 446; *Fisher*
v. *N. Y. C. & H. R. R. R. Co.*, 46 ib. 644; *Cox* v.
*Paul*, 175 ib. 328; *Griffin* v. *Interurban St. Ry. Co.*, 179
ib. 438, and same case, 180 ib. 538.) These cases, which I
have cited, were actions brought to recover aggregated pen-
alties for violations of prohibitory laws and they lay down
the rule that cumulative recoveries will not be permitted
by the courts, in the absence of such a definite statement
by the legislature as to leave its intention in that respect
unmistakable. When that appears, effect will be given to the
legislative intent. Such was the case, for example, in *Suydam*
v. *Smith*, (52 N. Y. 383), where a recovery of cumulative pen-
alties was upheld upon the language of the statute, which
imposed a penalty " for each offense." Recently, when con-
sidering the question in *Griffin* v. *Interurban St. Ry. Co.*,
(*supra*), this court took occasion to declare a rule of construc-
tion, upon the decisions, which should permit such recoveries
only in cases where the statute seemed to require them ; and
reference was made to the language of the act in question in
*Suydam* v. *Smith*, (*supra*), as an illustration of such a require-
ment. In the *Interurban Railway Company's* case the Rail-
road Law, upon a refusal to give a transfer to a passenger,
gave the right to recover a penalty " for every refusal to com-
ply." We did not think that that language was sufficiently

definite to authorize the recovery of cumulative penalties and, upon the reconsideration of the case, we pointed out the distinctive language in *Suydam* v. *Smith*, where a penalty was permitted "for each offense." It was, then, said, "that we think that 'every' is not always necessarily the synonym of 'each.'" Again, in *Cox* v. *Paul*, (*supra*), where the right to recover successive penalties for the refusal of a corporation and of its officers to exhibit its books to a stockholder was denied, it was said that the statute imposed a penalty "not for each and every, but for *any* refusal" etc. We have, therefore, given an interpretation to statutes imposing penalties, which forbids a recovery for aggregated penalties, unless it is to be found in their provisions that a penalty is given, expressly, for each offense. Turning, now, to the statute in question, we find that section 53 imposes a penalty recoverable by the People "of one hundred dollars *for each violation.*" What constitutes a violation? The act was designed to protect the health of the community and it prohibits the doing of two things. It may be violated by the manufacture and sale of adulterated, or imitation, vinegar; or it may be violated by the marking, or branding, of a cask, barrel, keg, or other package, as cider vinegar, when its contents are not cider vinegar, as defined by the law. That is to say, the adulteration of cider vinegar is a transgression of the law and the falsely marking, or branding, of any description of package containing it is another. The facts of this case show, with respect to two lots of cider vinegar which were inspected by the special agents, that each lot had been adulterated. There were, then, as I view the matter, but two violations of the statute in that respect; the one consisting in the adulteration of the lot, which was about to be shipped to the foreign purchaser, and the other in the adulteration of the lot, which, subsequently, was found standing on the factory floor, sold, or ready for sale. I think there were two transactions by the defendants, in each of which they had violated the law by the adulteration of the body of vinegar so put up, and for each of which one penalty was recoverable.

But it is clear, within the rule, that this judgment can, and should, be upheld upon the ground that there were repeated and distinct violations of the section of the statute which prohibited false marks, or brands. That section requires the manufacturer to plainly brand " *each cask, barrel, keg or other package* containing cider vinegar" with the words " cider vinegar " and it prohibits any person from falsely marking, or branding, " any package." The language, therefore, of section 53, when imposing a penalty of $100, " for each violation", of the law, while referable to the prohibition against adulteration, in its application to the provisions against false marks, or brands, seems to give, expressly, a right to recover a penalty in each instance that any package of vinegar is falsely marked, or branded. The precise wording of the statute is reason for giving it this strict interpretation and if any other were needed, it might readily be found in the nature and purpose of a law, enacted for the protection of the public health.

For these reasons, I advise that the judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Judgment affirmed.