THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. NATHAN ABRAMSON et al., Appellants.

Adulteration of milk — effect of Agricultural Law, § 32 — when Law applies although milk is delivered in another state — penalties.

1. Section 32 of the Agricultural Law (Cons. Laws, ch. 1) is a valid legislative enactment and is in no wise subject to the criticism of being an invalid regulation of interstate commerce. Its effect is not to exclude the sale, or shipment, of impure milk as an article of commerce. To the contrary, it permits that to be done, provided that the can containing it shall bear a label upon which are stated the constituents, or ingredients, of its contents.

2. Where a contract was made between residents of this state for the sale of milk which, because adulterated, according to the standard fixed by a statute of this state, was forbidden to be sold here unless labeled as therein prescribed, it is immaterial whether the delivery to the vendees, as the consignees of the milk, was complete in this or another state.

3. The language of the statute (§ 52), that " the sale of each one of several packages shall constitute a separate violation," authorizes a recovery of aggregate or cumulative penalties. (*People* v. *Spencer*, 201 N. Y. 105, followed.)

*People* v. *Abramson*, 147 App. Div. 491, affirmed.

(Argued March 17, 1913; decided April 15, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 4, 1911, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. L. Andrus* for appellants. The statute under which this action is brought for imposing the penalty sought to be recovered is contrary to the Federal Constitution as interfering with interstate commerce. (*State Freight Tax*, 15 Wall. 275; *The Daniel Ball*, 1 Wall.

1065; *Addystone* v. *U. S.*, 175 U. S. 246; *Wabash Ry. Co.* v. *Illinois*, 118 U. S. 571; *Ex parte Scott*, 66 Fed. Rep. 45; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Collins* v. *N. H.*, 171 U. S. 30; *Fox* v. *State*, 73 N. Y. S. R. 193; *Bowman* v. *Chicago Railway*, 125 U. S. 491; *R. R. Co.* v. *Husson*, 95 U. S. 465; *Minnesota* v. *Barber*, 136 U. S. 326; *Lawton* v. *Steele*, 152 U. S. 137; *Boston Dairy Co.* v. *Jones*, 72 Misc. Rep. 17; *Jacobson* v. *Massachusetts*, 197 U. S. 25.) It was error for the trial court to direct a verdict for a penalty for each can shipped by defendants. (*Cox* v. *Paul*, 175 N. Y. 328; *U. S. Condensed Milk Co.* v. *Smith*, 116 App. Div. 15; 191 N. Y. 536; *People* v. *L. I. R. R. Co.*, 149 App. Div. 765.)

*Charles R. O'Connor* for respondent. The penalties were incurred when said milk was delivered by defendants at the railway station at Dunraven, N. Y., for shipment. (*People* v. *Abramson*, 137 App. Div. 549; 147 App. Div. 491; *Gass* v. *A. V. Mills*, 121 App. Div. 182; *Bailey* v. *H. R. R. R. Co.*, 49 App. Div. 70; *People* v. *N. Fruit Co.*, 75 App. Div. 11.) The legislature of the state of New York in the exercise of its police or health powers can lawfully require that each can of milk, if it be not pure milk delivered, shipped or consigned to a resident of a foreign state, must bear a label or card upon which shall be stated the constituents or ingredients of the contents of the can. (*People* v. *Bishop*, 106 App. Div. 266; *People* v. *N. Fruit Co.*, 75 App. Div. 11; *People* v. *Arensberg*, 105 N. Y. 123; *People* v. *Koster*, 121 App. Div. 852; *Crossman* v. *Lurman*, 171 N. Y. 329; *People* v. *Luhrs*, 195 N. Y. 377; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *People* v. *Bowen*, 182 N. Y. 1.) The trial court properly directed a verdict for a penalty for each can shipped by defendants. (*People* v. *Buell*, 85 App. Div. 141; *People* v. *L. Dairy Co.*, 59 Misc. Rep. 22; *People* v. *Spencer*, 201 N. Y. 105; *Suydam* v. *Smith*, 52 N. Y. 383; *People* v. *N. Y. C. R. R. Co.*,

25 Barb. 199; *State* v. *K. C. R. R. Co.*, 32 Fed. Rep. 722; *People* v. *Koster*, 121 App. Div. 852.) Whether the milk was sold to be used in New York, New Jersey or elsewhere is utterly immaterial. (*People* v. *Rontey*, 121 N. Y. S. R. 173; *People* v. *Abraham*, 16 App. Div. 58; *State Board of Pharmacy* v. *Matthews*, 197 N. Y. 353.)

GRAY, J. This action was brought to recover penalties, incurred by the defendants for violations of the Agricultural Law of the state in the sale of cans of adulterated milk. Upon the trial, at the conclusion of the evidence, the court directed a verdict for the plaintiff for an aggregate amount of penalties, based on the number of cans sold, at the minimum sum imposed for each violation. The Appellate Division has affirmed the judgment and, upon this appeal, the questions presented for our consideration relate to the constitutionality of the statute, in its application to the transactions in question, and to the right of the plaintiff to recover a penalty upon each can of milk. The material facts of the case are few and are not in dispute. The defendants, having an office in the city of New York, conducted a creamery at Dunraven, in Delaware county of this state. They contracted with two persons, also, doing business in the city of New York, for the sale to them of milk at a price less than they were selling to the New York trade. Between certain dates, there were delivered to the vendees, under the agreement, in all, 336 cans of milk, containing, each, forty quarts of milk, and from each of which there had been taken, on the average, three and one-half quarts of cream. After being so skimmed, the cans were filled up with other skimmed milk. In that condition, they were delivered upon the cars of the Delaware & Eastern Railroad Company at Dunraven; each can bearing a tag addressed to the vendee in New York. The vendee paid the freight and the cans of milk were delivered to him at

the terminal station of the railroad in Weehawken, in the state of New Jersey. There was evidence on the part of the defendants, which we will assume to be true for the purposes of the case, to the effect that this milk was sold under an agreement that it should conform to the New Jersey standard and that it was to be sold by the vendees within the state of New Jersey; where they were, also, conducting a milk business.

The case may be considered, therefore, as one of a contract made between residents of this state for the sale of milk, which, for being adulterated, according to the standard fixed by a statute of this state, was forbidden to be sold and which the defendants claim to have sold for use in the vendees' business in another state. Section 32 of the Agricultural Law of the state, (Cons. Laws, ch. 1), provides that " no person shall sell or exchange, or offer or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholesome milk. * * * Any person delivering milk to any butter or cheese factory, condensary, milk-gathering station, or railway station to be shipped to any city, town, or village, shall be deemed to expose or offer the same for sale whether the said milk is delivered or consigned to himself or another. Each and every can thus delivered, shipped or consigned, if it be not pure milk, must bear a label or card upon which shall be stated the constituents or ingredients of the contents of the can." Section 30 of the same law provides that " the term, ' adulterated milk,' when so used, means: * * * milk from which any part of the cream has been removed. * * * All adulterated milk shall be deemed unclean, unhealthy, impure and unwholesome."

It is claimed, in substance, by the appellants that the statute, in so far as it applies to a sale of milk in this state to persons engaged in conducting a business in a foreign state, where the milk was to be used, is an attempt to regulate interstate commerce and is, therefore, in contravention of the Federal Constitution. The object and

intent of the statute, as declared by section 51, are "to prevent deception in the sale of dairy products, and to preserve the public health, which is endangered by the manufacture, sale and use of the articles or substances herein regulated or prohibited." I am quite unable to perceive how a statute of the state, with such a purpose and with such fair and wholesome provisions, could be held to constitute an undue restraint upon freedom of commerce among the states. As we have seen, the contract of sale was made between residents of this state. It is immaterial whether the delivery to the vendees, as the consignees of the milk, was complete at the railroad station of Dunraven, or at Weehawken in the state of New Jersey. In the latter case, the carriage of the milk between Dunraven and New York, two points within this state, over the soil of another state did not affect the domestic character of the business. (*Ewing* v. *City of Leavenworth*, 226 U. S. 464; *Lehigh Valley R. R. Co.* v. *Pennsylvania*, 145 ib. 192.) If the delivery was complete at Dunraven, the station of shipment, then the transaction was within the express provisions of the statute. In the case of *People* v. *Niagara Fruit Company*, (75 App. Div. 11; affd., 173 N. Y. 629), there had been a violation of the provisions of the Agricultural Law relating to the manufacture of vinegar and it was held that a person, who was guilty of violating the law, was liable to the penalty imposed; notwithstanding that the vinegar was intended for shipment, and was actually shipped, to customers in other states. If this statute, in its provisions, was similar to the statutes considered in the cases of *Minnesota* v. *Barber*, (136 U. S. 313), and of *Bowman* v. *Chicago & N. W. Railway Company*, (125 U. S. 465 491), we might have to take a different view of the question. The effect of the provisions of those statutes was, absolutely, to exclude the particular articles of commerce mentioned. Under the Minnesota statute, the sale of meat was prohibited, unless the cattle had been inspected by a

local inspector before being slaughtered, and that was held to be an invalid restraint of commerce; inasmuch as all animals, whose meat was to be used for food in the state, would have to be slaughtered within the state. In the second case cited, a statute of Iowa forbade common carriers to bring intoxicating liquors into the state from any other state, or territory, unless possessed of a certifi- cate, under the seal of the auditor of the county to which it was consigned, certifying that the consignee was authorized to sell intoxicating liquors. Such a law was held to be an invalid regulation of commerce among states; because its effect was absolutely to exclude an article of commerce. The effect of the provision of the Agricultural Law, now in question, is not to exclude the sale, or shipment, of impure milk as an article of com- merce. To the contrary, it permits that to be done; pro- vided that the can containing it shall bear a label, upon which are stated the constituents, or ingredients, of its contents. I think that the statute is a valid legis- lative enactment and that it is, in no wise, subject to the criticism of being an invalid regulation of interstate commerce.

The next point, which the appellants argue, is that it was error to direct a verdict for a penalty for each can sold and shipped by the defendants. Section 52 of the Agricultural Law provides that " the sale of each one of several packages shall constitute a separate violation " and imposes a penalty of not less than $50, nor more than $100, upon the ·person violating the statute, as a first offense. The precise language of the statute authorizes a recovery of aggregate, or cumulative, penalties. We had occasion to consider this question of cumulative pen- alties in *People* v. *Spencer*, (201 N. Y. 105), and, within the doctrine of that case, when it can be seen from the language of a statute that a penalty is expressly imposed for each instance of a violation; the intent will be given its full effect. The legislative intent could not have been

more clearly stated, with respect to the imposition of penalties for separate violations, than it is in this section of the statute.

For these reasons, I advise the affirmance of the judgment appealed from.

Cullen, Ch. J., Werner, Hiscock, Collin, Cuddeback and Miller, JJ., concur.

Judgment affirmed, with costs.