## THIRD DEPARTMENT, JULY, 1917.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BEAKES DAIRY COMPANY, Appellant.

*Agricultural Law — purchase of milk for shipment — license.*

Appeal by the defendant from an order of the Supreme Court, made at the Clinton County Special Term, and entered in the clerk's office of St. Lawrence county on the 27th day of November, 1916, denying the defendant's application for judgment upon its demurrer.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, on the ground that the purpose of the statute is to secure payment for the purchase price of merchandise, and is class legislation and not a valid exercise of the police power. All concurred, except Kellogg, P. J., dissenting in memorandum; Lyon, J., not voting.

KELLOGG, P. J. (dissenting): In this complaint the plaintiff seeks to recover judgment for 298 violations of sections 55 and 52 of the Agricultural Law.* Each violation is alleged as a separate cause of action and, after the first, is for a date succeeding the date mentioned in the preceding cause of action. The provision of the Agricultural Law under consideration,

---

* See Consol. Laws, chap. 1 (Laws of 1909, chap. 9), § 52, as amd. by Laws of 1916, chap. 384; Id. § 55, added by Laws of 1913, chap. 408, as amd. by Laws of 1915, chap. 651.— [REP.

so far as we are interested in it, prohibits any person from buying milk for the purpose of shipment to a city for consumption or for manufacture into butter, cheese and condensed milk, or other human food, unless such business is regularly transacted at an office or station within the State and unless the person be duly licensed therefor as provided by section 55. If the defendant, by continuing its business without a license, has violated this statute, and if it is valid, the order must be affirmed. It is vital to the public welfare that the cities of the State be supplied with pure and wholesome milk. It is of the utmost importance to the public welfare that the farmers should be induced to produce milk for use in the cities and that the persons purchasing and shipping milk for city use shall be responsible persons so that the seller shall receive pay for his milk. It is a fact too well known to need discussion that the farming community has suffered great damage by irresponsible persons buying on credit their milk for shipment to the large cities without paying therefor. Such transactions naturally tend to convince the farmer that it is better for him to limit his production of milk or take it to the home factory to be manufactured there, dealing with people whom he knows rather than to sell it for city use. It is apparently recognized as impracticable that the payments should be made to the farmer upon the delivery of each sale of milk. When a person seeks to buy milk from the farmers of the State to ship to the cities of the State for use and consumption, his transactions affect the public interest, and the welfare of the farming community means the welfare of the public, and the State may properly protect the farmer from irresponsible dealers who seek his milk for shipment to the cities. This law, as we have indicated, has more than one aspect. It naturally benefits the farmers, but it guarantees the city a supply of milk. The farmer is not naturally a financier, and when he produces the milk he should be reasonably assured that he is to have its value, and the State may prevent irresponsible people from taking away his milk without giving some reasonable surety that it will be paid for. In the absence of some such provision, the shipment of milk to the cities would fall off and be greatly limited. It is unnecessary to cite the many cases sustaining statutes providing for licensing or regulation of the various trades, businesses and professions in the interests of the public welfare. We conclude this statute is a proper exercise of the police power of the State and is valid. . " It may be said in a general way that the police power extends to all the great public needs. (*Camfield* v. *United States*, 167 U. S. 518.) It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of successful commerce. One of those conditions at the present time is the possibility of payment by checks drawn against bank deposits, to such an extent do checks replace currency in daily business. If then the Legislature of the State thinks that the public welfare requires the measure under consideration, analogy and principle are in favor of the

power to enact it." (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 111; *Assaria State Bank* v. *Dolley*, Id. 121.) · Those cases uphold the bank depositors guarantee fund requiring all banks to contribute to a fund indemnifying the creditors of a failed bank. In *Musco* v. *United Surety Co.* (196 N. Y. 459) a statute requiring all corporations, firms and persons engaged in selling steamship or railroad tickets for transportation to a foreign country, who also receive deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries, to give bonds to the State for the faithful holding and transmission of such fund, was held within the police power. Section 55, added to the Agricultural Law (Consol. Laws, chap. 1) by chapter 408 of the Laws of 1913, so far as matters occurring after such condition, has the same force and effect as if it had been a part of chapter 1 when enacted. Section 61 was also added to the Agricultural Law with section 55, and makes the violation of section 55 a misdemeanor. It is urged by the appellant that no other punishment exists for a violation of section 55 except a criminal prosecution. Section 52 of the Agricultural Law declares that every person violating any of its provisions shall forfeit to the People of the State of New York the sum of not less than $50, nor more than $100 for the first violation and not less than $100 nor more than $200 for the second and each subsequent violation. We conclude that the violator of section 55 is subject to indictment and also to a civil action for the penalties imposed by section 52. It is urged that cumulative penalties cannot be recovered. That question may not be squarely before us, but may properly be considered. Cumulative penalties cannot be recovered in the absence of a legislative direction therefor. Similar words have been held to authorize a recovery of cumulative penalties. (*People* v. *Spencer*, 201 N. Y. 105.) This statute speaks of the first violation and of the second and each subsequent violation, and fixes a penalty for them. This would be unnecessary and unusual if a single recovery was to embrace all violations up to the time of the action brought. It treats each violation as a separate offense and penalizes it. It necessarily follows that the penalties for two violations may be recovered in one action, and that a recovery for one penalty does not satisfy the statute as to all prior offenses. The order should, therefore, be affirmed, with ten dollars costs and printing disbursements.