CHARLES S. WILSON, as Commissioner of Agriculture of the State of New York, Appellant, *v.* JOSEPH ISRAEL, Defendant, Impleaded with GLOBE INDEMNITY COMPANY, Respondent, and COLD SPRING CO-OPERATIVE CREAMERY ASSOCIATION OF ROXBURY, NEW YORK, Appellant.

First Department, January 10, 1919.

**Agricultural Law, section 55, construed — license of purchaser of milk for shipment — when domestic corporation a " producer " within meaning of statute — word " person " includes corporations.**

Section 55 of the Agricultural Law, relating to the licensing of purchasers of milk to be shipped, should be liberally construed to accomplish the purpose intended by the Legislature, which was to secure to those engaged in dairy pursuits pay for the milk and cream sold to a licensee to be consumed or manufactured in a distant city.

A domestic corporation, with a capital stock of $5,000, all owned, with the exception of one-half of one share, by producers of milk organized for the purpose of carrying on the manufacture of butter and cheese and the sale of milk upon a co-operative plan, which sold milk to one who had procured a license to engage in the business of buying milk pursuant to the provisions of section 55 of the Agricultural Law, is a " producer " of milk and cream and entitled to the protection of the bond of the purchaser, under the provisions of said section, so as to permit it to recover from said purchaser in an action by the Commissioner of Agriculture, pursuant to the statute.

Even if said corporation be not a " producer " of milk, still it comes within the general provisions of the statute to the effect that the bond is conditioned for the prompt payment of all amounts due for milk or cream sold to the licensee during the period covered by the license.

The word " person," as used in section 55 of the Agricultural Law, under the General Construction Law, includes corporations.

PAGE and SHEARN, JJ., dissented, with opinion.

APPEAL by the plaintiff, Charles S. Wilson, as Commissioner of Agriculture, and by the defendant, Cold Spring Co-operative Creamery Association of Roxbury, N. Y., from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of New York on the 5th day of July, 1918, dismissing the complaint on the merits upon the decision of the court after a trial before the court without a jury.

*Robert P. Beyer* of counsel [*Merton E. Lewis, Attorney-General,* attorney], for the plaintiff, appellant.

*Charles R. O'Connor* of counsel [*O'Connor & O'Connor,* attorneys], for the defendant, appellant.

*James A. Foley* of counsel [*Robert M. McCormick,* attorney], for the defendant, respondent.

LAUGHLIN, J.:

This is an action by the Commissioner of Agriculture of the State of New York, pursuant to the provisions of section 55 of the Agricultural Law (Consol. Laws, chap. 1 [Laws of 1909, chap. 9], added by Laws of 1913, chap. 408, as amd. by Laws of 1915, chap. 651), to collect, for the benefit of the defendant, appellant, the amount of an indebtedness owing to it by the defendant Israel for milk and cream sold and delivered to him. Said section of the Agricultural Law renders it unlawful for any person, firm, association or corporation to buy milk or cream within the State from producers for the purpose of shipping it to any city for consumption or for manufacture unless duly licensed therefor and unless the business be regularly transacted at a designated office or station within the State; and it is therein provided that a license shall not be issued for such purpose unless the applicant shall file with the application a good and sufficient surety bond in a sum not less than $5,000 or shall be relieved from such requirement as therein provided, and that the bond shall run to the Commissioner of Agriculture in his official capacity and shall be conditioned for the faithful compliance by the licensee with the provisions of the Agricultural Law, as thereby amended, in which said section 55 is found, and for " the payment of all amounts due to persons who have sold milk or cream to such licensee, during the period that the license is in force."

The defendant Israel was desirous of engaging in the business of buying milk and cream from producers for the purpose of shipping it to the city of New York for consumption and to that end filed with the Commissioner of Agriculture his bond dated August 30, 1915, with the defendant Globe Indemnity Company as surety, in which it is recited that he had

applied or was about to apply for a license to engage in the business of buying milk pursuant to the provisions of said section for the year commencing September 1, 1915, and ending August 31, 1916, at 34 Norfolk street in the city of New York, and conditioned, among other things, that if the commissioner should issue a license and if the licensee should faithfully comply with the provisions of the Agricultural Law " and promptly make payment to the proper person or persons, of all amounts due to persons who have sold milk or cream " to him during the period covered by the license, then the obligation should be void, but otherwise it was to remain in full force and virtue. A license was duly issued to Israel on his application and on said bond and thereafter and during the period covered by the license he bought at Roxbury milk and cream of the defendant, appellant, the purchase price of which aggregated $1,577.70, no part of which he paid.

The statute provides that upon default by the licensee " in the payment of any money due for the purchase of milk or cream, * * * the creditor may file with the Commissioner of Agriculture * * * a verified statement of his claim," and that after ninety days from the termination of any license period the Commissioner shall bring an action to determine the amount due each such creditor and that all creditors and the surety on the bond of the licensee and the licensee shall be parties, and that the judgment recovered therein shall be enforced ratably for the creditors against the surety on the bond. No other creditor filed a verified statement of claim with the Commissioner.

The evidence is uncontroverted. The complaint has been dismissed on the theory that the defendant, appellant, was not a *producer* of milk within the provisions of said section of the Agricultural Law. The defendant, appellant, is a domestic corporation and was incorporated on the 1st of April, 1899, by farmers who were milk producers residing in the vicinity of Roxbury, N. Y. At that time the farmers, many of whom were obliged to carry the milk several miles, were receiving only one and a half cents per quart for milk. The chief industry in the town of Roxbury, which is in Delaware county, was the production of milk for the New York city market. The company was organized for the purpose of enabling the

farmers by thus co-operating to obtain a better market for
their milk. Its original by-laws provided that the object
of the incorporation was to carry on the manufacturing of
butter and cheese and the sale of milk " in such a manner as
will conduce to the greatest convenience and profit of the
producers over the greatest amount of territory," and they
have not been changed. The capital stock of the company was
$5,000, consisting of shares of $50 each, and thirty-seven
shares were issued and outstanding and all of them, with the
exception of one-half of one share, were owned by producers
of milk. It is further provided in the by-laws that the associa-
tion should be co-operative and that from the gross receipts
for each month there should be deducted the running expenses
and after the first year six per cent per annum on the capital
stock issued, and that the balance, less one cent per pound
of butter fat furnished during the month, which was to be
reserved as a sinking fund, should be divided among the
patrons in proportion to the amount of butter fat in the milk
delivered by them as shown by the Babcock test. Any person
directly interested in agricultural pursuits was eligible to
membership, as it is described, and entitled to one vote for
each share of stock owned by him, but according to the by-laws
the ownership of the stock was to remain in persons directly
interested in agricultural pursuits. The corporation was not
organized for profit and, with the exception of the return of
six per cent on capital invested after the first year, the entire
net proceeds, excepting said amount reserved for the sinking
fund to maintain the plant, is distributed to the stockholders
for their milk and cream. The company also marketed milk
and cream for patrons who were not stockholders but made no
charge therefor, and ninety per cent of the patrons were
stockholders. The defendant, appellant, owned no cows itself.

If that part of the statute relating to *producers* were to be
construed strictly and technically, doubtless it might be held
that the defendant, appellant, was not a producer of milk;
but I am of opinion that it should be liberally construed to
accomplish the purpose intended by the Legislature, which
was to secure to those engaged in dairy pursuits pay for the
milk and cream sold to a licensee to be consumed or manu-
factured in a distant city, and that such protection may be

afforded the farmers in the vicinity of Roxbury who united in the formation of this corporation on the plan stated for the purpose of jointly marketing their milk and cream. It is to be inferred from the statute that the Legislature recognized that those who sell milk and cream extend credit to the purchasers who market it, and that it was essential that they should have the protection afforded by such a bond. The court in *People* v. *Beakes Dairy Co.* (179 App. Div. 942) recognized these facts and stated, in effect, that the statute was enacted with a view to encourage the production and the sale of milk for the benefit of the consumers in cities rather than to have it manufactured into cheese at home. I am, therefore, of opinion that the defendant, appellant, was a producer of milk and cream within the purview of the statute and that the same reason exists for affording it the protection of the bond that exists for protecting the individual farmers of whom it is composed. But if the defendant, appellant, be not a producer of milk, still I think it comes within the statute for it is within the express provisions thereof, which are general, to the effect that the bond is conditioned for the prompt payment of all amounts due for milk or cream sold to the licensee during the period covered by the license. The word " persons " as used in the statute, of course, under the General Construction Law (Consol. Laws, chap. 22 [Laws of 1909, chap. 27], § 37) includes corporations, and since a corporation may lawfully be formed for the purpose of dealing in milk, I see no reason why it should not come within the protection of the statute. If a corporation may lawfully be formed for the purpose of collecting milk from the farmers and selling and delivering it at a station in the vicinity to a licensee for shipment and consumption in a city, the protection of the farmers in dealing with such a corporation will be subserved by holding that the corporation is entitled to the benefits of the statute for that tends to enable it to pay the farmers for the milk thus marketed for them, and, therefore, I think such a corporation fairly comes within the intent of the statute, even though it does not come within the letter thereof with respect to being a producer and the statute should be construed as embracing it. (*People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43.)

There is no force in the contention that the defendant, appellant, required a license under the statute, for the reason that it was a producer, and if not a producer, it was a co-operative creamery association engaged in marketing milk for the producers at a station in the vicinity of where the milk was produced, and not in shipping milk to cities for consumption.

It follows that the findings of fact and conclusions of law inconsistent with these views should be reversed and appropriate findings and conclusions in accordance therewith made, and the judgment should be reversed, with separate bills of costs to appellants and judgment granted in favor of plaintiff, appellant, with costs against the principal and surety on the bond.

DOWLING and SMITH, JJ., concurred; PAGE and SHEARN, JJ., dissented.

PAGE, J. (dissenting):

If the Cold Spring Co-operative Creamery Association were merely an unincorporated association of farmers for the co-operative marketing of the milk produced by each member, or if it were incorporated under the Membership Corporations Law, I could accept the conclusion of the majority of the court that it was a producer of milk within the purview of section 55 of the Agricultural Law (Consol. Laws, chap. 1 [Laws of 1909, chap. 9], added by Laws of 1913, chap. 408, as amd. by Laws of 1915, chap. 651). This association, however, was incorporated under and by virtue of the Business Corporations Law, and declared by its certificate of incorporation to be formed for the purpose of owning and operating a creamery and conducting a general creamery business, and for the purpose of purchasing, manufacturing, selling and dealing in milk, cheese and other dairy products, with a capital stock of $5,000. It appears from the by-laws of the association that the stockholders are not limited to farmers producing milk, but that any person directly interested in agricultural pursuits may become a stockholder. Nor is the buying of milk limited to purchases from stockholders, but the association is expressly authorized to accept milk from any person

not a stockholder on the terms and conditions that may be prescribed by the directors.

In my opinion, this business corporation, engaged in the business of buying and selling milk, does not come within the letter or spirit of section 55 of the Agricultural Law. This would seem to be clear from the language used, that " no person, firm, association or corporation, shall buy milk or cream within the State from *producers* for the purpose of shipping the same * * * " without obtaining a license and giving a bond as therein provided, conditioned " for the faithful compliance by the licensee with the provisions of this chapter, as hereby amended, and for the payment of all amounts due to persons who have sold milk or cream to such licensee, during the period that the license is in force." Evidently the term " persons who have sold " refers to those to purchase from whom the license is issued, and that is, " producers." The obvious meaning of the words *producer of milk* is one who keeps cows for the production of milk for market or for sale or exchange. (See Agricultural Law, § 31, as amd. by Laws of 1910, chap. 216.) That the Legislature did not intend that this section 55 should be given the broad construction of the prevailing opinion appears conclusively from a history of the section. As enacted in 1913 (Laws of 1913, chap. 408) it read, that " no person, firm, association or corporation, shall buy milk within the State for the purpose of shipping * * * " without obtaining a license entitling the applicant " to conduct the business of buying milk *from dairymen.*" The Attorney-General gave an opinion, dated February 24, 1915, defining the word " dairyman " to mean not alone one who keeps cows for the production of milk, but also a man who sells milk, and hence that the latter was entitled to the protection of the provisions of section 55 of the Agricultural Law. (*Matter of Construction of Agricultural Law,* §§ *55-61,* 3 State Dept. Rep. [Official] 423, 424.) Immediately after the giving of this opinion, section 55 was amended by chapter 651 of the Laws of 1915, by inserting " from producers " in the first sentence, and substituting the word " producers " for " dairymen " in the other portion above referred to, and otherwise amending the section to clear up certain ambiguities which had been pointed out in the opin-

ion; thus showing that the law was changed by reason of the opinion. The very fact that the prior law was amended shows the intention of the Legislature to change the law as it theretofore existed. When, therefore, we find a statute which had been construed to include not alone producers of milk, but also any one who sells milk, and the Legislature amends the law, limiting its application to producers, thus declaring its intent, in my opinion it is the duty of the court to give the limited effect which the Legislature has enacted, and not by judicial construction restore the law to its original form. It cannot be successfully claimed that this creamery association is a producer of milk. It does not own a single cow. It is not, therefore, in my opinion, entitled to the protection of the act, and the order should be affirmed.

SHEARN, J., concurred.

Judgment reversed, with separate bills of costs to appellants, and judgment granted in favor of plaintiff, with costs against the principal and surety on the bond. Order to be settled on notice.