(86 South. 154)

### WESTERN UNION TELEGRAPH CO. v. GLOVER. (6 Div. 656.)

(Court of Appeals of Alabama. Jan. 13, 1920. Rehearing Denied Feb. 10, 1920.)

1. COMMERCE ⊜⟶28—MESSAGE NOT "INTERSTATE COMMERCE," THOUGH RELAYED AT POINT IN OTHER STATE.

A contract, made in the state for the transmission of a message from one point to another point therein, was not subject to the federal law governing interstate transactions under amended Act of Congress of June 18, 1910, though the telegraph company transmitted message by way of a relay station in another state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. PARTIES ⊜⟶76(2) — THAT CONTRACT WAS NOT MADE WITH DEFENDANT NOT GROUND FOR ABATEMENT.

In an action for breach of contract, that defendant was not a party to the contract is not the subject for a plea in abatement, but is a bar to the action available under the general issue.

3. EVIDENCE ⊜⟶34 — JUDICIAL KNOWLEDGE TAKEN OF JOINT RESOLUTION OF CONGRESS.

The Court of Appeals will take judicial knowledge of a joint resolution of Congress.

4. EVIDENCE ⊜⟶46 — JUDICIAL KNOWLEDGE TAKEN OF PRESIDENT'S PROCLAMATION.

Court of Appeals will take judicial knowledge of a proclamation of the President of the United States.

5. TELEGRAPHS AND TELEPHONES ⊜⟶26¾, NEW, VOL. 7A KEY-No. SERIES—COMPANY UNDER FEDERAL CONTROL NOT LIABLE FOR BREACH OF CONTRACT.

A telegraph company was not liable for breach of contract made when it was under federal control under joint resolution of Congress of July 16, 1918 (U. S. Comp. St. Ann. Supp. 1919, § 3115¾x), and the President's proclamation of July 22, 1918, though it did not disclose its agency for the government; the sender being chargeable with such knowledge.

Appeal from Circuit Court, Jefferson County; Dan A. Greene, Judge.

Action by James Glover against the Western Union Telegraph Company, for breach of contract to deliver telegram. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Johnston & Cocke, of Birmingham, and Francis R. Stark, of New York City, for appellant.

The message was interstate, and plaintiff was not entitled to recover damages for mental anguish. 198 Ala. 682, 73 South. 973; 200 Ala. 65, 75 South. 393. The contract was not made with the defendant, but with the agents of the federal government. 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623; Joint Resolution of Congress July 16, 1918, and Proclamation of President July 22, 1918. Therefore action will not lie against the defendant. 99 S. E. 846; 254 Fed. 88, 165 C. C. A. 478; (D. C.) 256 Fed. 549; (D. C.) 257 Fed. 138; 175 N. Y. Supp. 84. The contract was public, and not private. 1 Cranch, 345, 2 L. Ed. 130; 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216.

Beddow & Oberdorfer, of Birmingham, for appellee.

No brief reached the Reporter.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SAMFORD, J. The plaintiff bases his claim upon an alleged contract made with the defendant, whereby it is alleged that on November 14, 1918, defendant accepted a message from plaintiff's agent, at Selma, Ala., to be delivered to plaintiff at Birmingham, Ala., for hire, which message the defendant failed to promptly deliver, thereby breaching the contract and causing damage, etc. To the complaint as filed, defendant filed a plea in abatement, setting up the fact that on July 16, 1918 (U. S. Comp. St. Ann. Supp. 1919, § 3115¾x), by joint resolution, the United States Congress authorized and empowered the President of the United States, whenever he deemed it necessary for the national security or defense, to supervise or take possession and assume control of all wire lines, or any part thereof, and to operate the same in such manner as may be needful or desirable for the duration of the war, and setting out the proclamation of the President, under date of July 22, 1918, taking over all the telegraph lines in the United States, including defendant. This plea was demurred to, and demurrer sustained. While the plea was not subject to the grounds of demurrer interposed, it was not a good plea in abatement, and on motion should have been stricken, for reasons that will hereinafter appear.

[1] The contract was made in Alabama for the transmission of a message from one point in Alabama to another point in Alabama, and, while it is not necessary to a decision of this case, we do not agree with the contention of appellant's counsel that, because defendant chose to transmit the message by way of a relay station in Atlanta, Ga., the contract thereby became subject to the federal law governing interstate transactions. In reaching this conclusion we are not unmindful of the decisions of other states relating to shipments of freight over railroads, whose lines diverge from the point of shipment into another state and return to the point of destination in the same state, and upon which decisions rests the authority for some courts of other states to hold that the same rule applies to telegraph lines, by reason of the Carmack Amendment, which amendment withdraws from the states the entire subject of the regulation of the interstate carriage of freight and passengers and vests it in the Interstate Commerce Commission. The amended act of June 18, 1910 (36 Stat. 539, c. 309), placed telegraph and telephone companies in the same category as railroads with this proviso:

"That the provisions of this act shall not apply * * * to the transmission of messages by telephone, telegraph or cable wholly within one state and not transmitted to or from a foreign country from or to any state or territory as aforesaid."

Construing this proviso, the courts of Virginia, Kentucky, Missouri, Oklahoma, North Carolina, and South Carolina have held that a message originating at a point in a state on a contract to deliver it to another point in the same state is interstate commerce, if in the transmission the wires of the transmitting company pass over or through another state. These authorities are collated in Bateman v. Western Union Telegraph Co., 174 N. C. 97, 93 S. E. 467, L. R. A. 1918A, 803, and note, and seem to be uniform, with the exception of People v. Abramson, 208 N. Y. 138, 101 N. E. 849, and W. U. Tel. Co. v. Taylor, 57 Ind. App. 93, 104 N. E. 771. If the law is, as declared by a majority of the opinions on the subject, then, a telegraph company, by having a relay office in Alabama for its Georgia business and a relay office in Georgia for its Alabama business, and so on throughout the union, could divest the states of all semblance of jurisdiction, relieve itself from the burdens of taxation, and "snap' its fingers" at all state authority, and a farmer by crossing the bridge at Phœnix City, Ala., and recrossing it at Girard, one mile further down, could escape the jurisdiction of both states, and while in his wagon making the trip would be only under federal jurisdiction. We cannot think that the Congress of the United States, composed of the representatives of the people, had any such construction in mind, when the act was passed.

[2] The controlling question in this appeal, however, is, Was the contract for the transmission of the message made with the defendant? If it was not, then there was no contractual duty on its part, and therefore the plaintiff could not recover in this action. This was not the subject for a plea in abatement, as was undertaken by the defendant, but was a bar to the action, so far as defendant was concerned, and, being a necessary allegation in the complaint, was available under the general issue.

[3-5] Whatever contract was made with reference to the message, was with the manager of the telegraph office at Selma, Ala., November 14, 1918, at a time when all of the defendant's property was in the possession of the United States government, and the defendant corporation, together with all of its operators, were under the direction and control of the federal authorities, acting under the powers conferred by Congress by joint resolution July 16, 1918, and the proclamation of the President July 22, 1918, of which this court takes judicial knowledge. W. U. Tel. Co. v. Laslie, 84 South. 864;[1] Vaughn v. State, 81 South. 417.[2] At the time the contract in this case was made, the defendant was a mere agency of the federal government, in the operation of its lines, which for the time being were in the possession of the federal government and being operated for it, and the defendant and its employés became

---

[1] Ante, p. 308.　　[2] Ante, p. 35.

ipso facto, collectively and individually the employés and agents of the government within the scope of their various employments. This court, in a carefully considered opinion, rendered by the then presiding Judge Brown, in Vaughn v. State, 81 South. 417.[2] held to this view, and while in that case it was held that the corporation was a bailee of property alleged to have been stolen, that holding was in line with the holding that the corporation itself was acting as an agent. To the same effect are the following adjudications: Schumacker v. P. R. R. Co., 106 Misc. Rep. 564, 175 N. Y. Supp. 84; Com. Cable Co. v. Burleson (D. C.) 255 Fed. 99; R. R. Com. v. Burleson (D. C.) 255 Fed. 604; S. W. Tel. & Telephone Co. v. Houston (D. C.) 256 Fed. 690; State v. Burleson (Sup.) 82 South. 458.[3] But, whatever services were being rendered by the corporation to the federal government, it was no part of its duty to make contracts for the transmission of messages. This service had been assumed by the government itself, and was being carried on by its employés and agents in charge of the local offices, who acted under instructions, not from the corporation, but from the Postmaster General. Under these circumstances telegraph services and facilities afforded the public by the government during the period of its control were afforded, not as a matter of right which the public could demand, but as a matter of discretion on the part of the government, and as to which, the corporation was in no way concerned. In other words, when the Postmaster General, acting under the law, took possession of the physical properties of defendant and control of the defendant, the defendant became the agent of the government, subject to instructions, just as any other instrumentality drafted for service during the war. True, it maintained its corporate existence, but certain of its powers were suspended, and it retained no control over its property or employés, except subject to the orders of the government. Dakota Cent. Tel. Co. v. South Dakota, 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623.

This being the law, the plaintiff, as well as every one else, was charged with knowledge, and hence it cannot be claimed he was dealing with an agent who did not disclose his principal. Being an agent of the government, even if it did make the contract sued on, the contract was public and not personal. Hodgson v. Dexter, 1 Cranch, 345, 2 L. Ed. 130. Being a public and not a private contract, it imposes no personal liability. Schloss & Kahn v. McIntyre, 147 Ala. 557, 41 South. 11.

The defendant was entitled to the general affirmative charge as requested, and for the court's error in this ruling the judgment is reversed, and the cause remanded.

Reversed and remanded.