ADDIE SPEIGHT v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 8 October, 1919.)

1. **Telegraphs—Intrastate Commerce—Interstate—Relays.**

   A telegraph company accepting a telegram to be transmitted between points in this State, where a recovery for mental anguish is allowed, may not avoid such liability under the Federal decisions by unnecessarily sending the message through another State, when it could have reasonably been otherwise transmitted.

2. **Constitutional Law—Federal Government—State's Rights—Commerce—Telegraphs.**

   The power to regulate commerce among the several States, etc., is delegated to the Federal Government by Art. I, sec. 8, clause 2, of the Federal Constitution, and the right to regulate intrastate commerce is among those reserved to the State under the tenth amendment; and where a telegram is of intrastate character, the jurisdiction of the State courts

may not be ousted by the telegraph company unnecessarily relaying it at its offices in another State. This will not change it into an interstate message.

3. **Telegraphs — Commerce—Interstate—Relays—Burden of Proof—Verdict Set Aside.**

Where a telegraph company has direct available facilities for transmitting an intrastate telegram altogether within the State, and relays it at offices in another State, the burden of proof is upon it to show that it was not done to evade the jurisdiction of the State court, and it is reversible error for the trial judge to set aside the answer to the issue in the plaintiff's favor as a matter of law.

ALLEN, J., dissenting.    WALKER, J., concurring in opinion of Court.

APPEAL by defendant from *Kerr, J.,* at November Term, 1918, of HALIFAX.

This was an action for damages for the negligent alteration in the transmission of a telegram from Greenville, N. C., to Rosemary, N. C., both in this State. The message was as follows:

"GREENVILLE, N. C., 9:45 A. M.

Mrs. ADDIE SPEIGHT,                                    1-24-18.
            Rosemary, N. C.

Father died this morning. Funeral tomorrow, 10:10 a. m.

APPIE O. SMITH."

This message was delivered to the plaintiff at Rosemary, N. C., on the same day with the date changed from 24 January to 23 January, 1918, thus making the telegram read "Father died this morning (i. e., 23 January). Funeral tomorrow (i. e., 24 January)."

Upon receiving this message in the changed form the plaintiff believed that her brother, who was the father of the sender of the message, died on 23 January and would be buried on the 24th, the date of its delivery, and it was impossible for plaintiff therefore to reach Greenville in time to attend the funeral. If the message had been correctly dated it would have been apparent that the funeral was to take place on 25 January, and the plaintiff was thus misled and prevented from attending the funeral. The jury responded to the issues that the message sued on was sent out of North Carolina into Virginia and thence back into North Carolina "for the purpose of fraudulently evading liability under the laws of North Carolina"; that it was "negligently changed in transmission in the manner alleged by plaintiff," and that she was entitled "to recover $100 damages."

The court set aside the verdict, being of opinion that as a matter of law in no view of the testimony was the plaintiff entitled to recover, and entered a judgment of nonsuit. The plaintiff appealed.

·The defendant's appeal is upon the ground that there was no evidence to submit to the jury upon the first issue whether the message was sent out of the State, through Weldon to Richmond, thence to Norfolk, and thence back through Weldon to Rosemary to evade the State law.

The ·plaintiff's appeal is upon the ground that the court set aside the verdict as a matter of law because the message upon the evidence was interstate and therefore damages could not .be recovered.

*George C. Green, J. P. Pippen and Murray Allen for plaintiff.*
*W. E. Daniel for defendant.*

CLARK, C. J.   We do not think it necessary to pass upon the question presented by the defendant's appeal for we deem that as a matter of law this was an *intrastate* message and hence governed by our decisions, and it is immaterial whether the message was sent through Weldon, N. C., to Richmond, Va., and thence to .Norfolk, Va., and thence back through Weldon, N. C., to Rosemary, N. C., in order to evade the North Carolina laws applicable to the transmission of messages of this nature in intrastate commerce, or whether this remarkable circumlocutory method of transmission was due solely to the method which the defendant corporation had adopted for its own convenience in transmitting messages from Greenville to Rosemary.   Both these points are in this State, and the defendant has a continuous line entirely in this State and in operation from Greenville to Rosemary.   It transmits messages from Greenville to Weldon (67 miles) without going through Richmond, and it transmits messages from Weldon to Rosemary without sending them through . Norfolk.   It could have transferred this message at Weldon, N. C., and it did not make this an interstate message because the corporation chose to forward it to Richmond, Va., thence to be sent back through Norfolk, Va., to Rosemary, N. C.

It could as well have sent the message to Raleigh, to which it has a direct line, there to be transferred to Rosemary, to which point there is also a direct line from Raleigh, all in this State.

It was by the defendant's own method, adopted for its own convenience, or according to the notions of some superintendent, that there were two transfers made at Richmond and at Norfolk, both in another State, instead of by the natural method of one transfer point either at Raleigh or Weldon, both in this State.

If the defendant saw fit to adopt business methods requiring this remarkable system of making three transmissions each of greater length than the entire distance from Greenville to Rosemary, i. e., Weldon to Richmond, Richmond to Norfolk, and Norfolk to Rosemary, it does not concern· the plaintiff, provided the message was delivered with

promptness and without this error in transmission, which was doubtless caused by the additional relays required by this system of transmission.

If a package were sent by mail route or by stage, or by wagon, from Greenville to consignee in Rosemary, there being a continuous route between the two points in such condition that it did not require the wagon or stage-coach to go through Virginia to get from Greenville, N. C., to Rosemary, N. C., this would be an *intrastate* transaction, and the fact that the carrier chose that roundabout method of making the transportation through another State would not make this interstate commerce.

Frequently cars are put into "through trains" which rarely stop to cut out cars. If a carload of tobacco were shipped from Greenville to Rosemary, there being, as there is, continuous rail connection between the two points, this would not become interstate commerce because the railroad company, being reluctant to cut out the car at Weldon, should, for its own convenience, carry it on to Richmond, thence send it to Norfolk and then again tranship it from Norfolk through Weldon to Rosemary. The convenience or the whim of the carrier does not repeal the jurisdiction of the State over matters retained by it in its grant of interstate commerce to the Federal Government.

If the jurisdiction of the State depends upon the method which the telegraph company shall see fit to adopt in the transmission of messages from one point to another in the State, the State laws could be repealed entirely, and doubtless would be, by the defendant telegraph company simply sending every message between two points in this State to a point outside the State and thence back into North Carolina, for it would be almost impossible to prove that this was done to evade the State jurisdiction since no one but the defendant and its agents can know its motive. The question is not the motive of the defendant in shifting around its messages in this most extraordinary manner, but whether it has a direct line between the two points which is in regular use and not out of repair, and which can be used without carrying the message to another State and thence back into this State. It is not a question of motive, nor of what method the defendant prefers to do its business, nor of red tape, but simply a question of fact whether the initial and terminal points are in this State and whether there is a direct telegraph line between the two points, in good condition and in use, over which the message can be transmitted without passing through another State. If so, it is an intrastate message whether it is actually sent through another State or not.

If commerce is between two points in the same State the jurisdiction of the State over it is protected by the Federal Constitution by which jurisdiction of interstate commerce only is given to the Federal Govern-

ment, and which provides that all power and authority not therein conferred is reserved to the several States. Whether commerce between two points in the same State is intrastate depends primarily upon whether both termini are in this State, and the only exception is when it is necessary to cross through the territory of another State in passing from the initial point in this State to the terminal point, also in this State. This was held by *Shepherd, C. J.,* in *Comrs. v. Telegraph Co.,* 113 N. C., 222, affirming the ruling of the Railroad Commission to that effect.

In *Leavell v. Telegraph Co.,* 116 N. C., 220, this Court affirmed the last cited case, saying: "In *R. R. Commission v. Telegraph Co.* (*Albea's case*), 113 N. C., 213, the Court held that telegraphic messages transmitted by a company from and to points in this State, although traversing another State in the route, do not constitute interstate commerce and are subject to the tariff regulation of the commission. In this it followed the unanimous opinion of the Supreme Court of the United States, delivered by *Fuller, C. J.,* in *R. R. v. Pennsylvania,* 145 U. S., 192. To the same purport, *Campbell v. R. R.,* 86 Iowa, 587."

In *Bateman v. Tel. Co.,* 174 N. C., 97, the message was transmitted from Hertford, N. C., to Plymouth, N. C., and there being no direct telegraph line entirely in North Carolina from Hertford, N. C., to Plymouth, N. C., the message was necessarily sent through Norfolk, Va., and thence to Plymouth, and the Court held that if this was done in good faith it was an interstate message, but that is not the case here where there is a complete line of wire running from Greenville to Rosemary entirely in the State. The *Bateman case* did not present the anomalous situation which we have here of the message going through Weldon in this State to Richmond, Va., thence to Norfolk, Va., and thence back through Weldon, N. C., to Rosemary, N. C.

In *R. R. v. Pennsylvania,* 145 U. S., 192, it was held that transportation from one point in a State to another point in the same State but passing through part of another State could be taxed by the State, and is not a tax upon interstate commerce. This was a unanimous opinion and written by *Chief Justice Fuller.* To same effect *Sewell v. R. R.,* 119 Missouri, 222; *Campbell v. R. R.,* 86 Iowa, 587; *S. c.,* 17 L. R. A., 443. In *R. R. v. R. R. Comrs.,* 106 Fed., 253, it was held, citing the above cases, and *Comrs. v. Tel. Co.,* 113 N. C., 213, that "Where the course of transportation between two points in the same State must be for a considerable part of the distance through another State" it is interstate commerce. This seems to be the modification or rather interpretation of the doctrine of the three cases named. Certainly it is the only reasonable limitation.

It has also been held that where a telephone line extends into another State this does not exempt it from State control in respect to persons

and service and rates for persons within the State. *Tel. Co. v. Falley,* 118 Indiana, 201; *Tel. Co. v. Bradbury,* 106 Indiana, 1, and *Hockett v. State,* 105 Indiana, 201; 31 L. R. A., 807 N.; 60 L. R. A., 646 N.

In *Tel. Co. v. Reynolds,* 100 Va., 459; *S. c.,* 93 Am. St., 971, it was held: "Where the initial and terminal points are both in the same State and the telegram is transmitted over the wires of the same company and concerns only the citizens of that State, the message is a domestic message and its character in that respect is not altered by the circumstance that the line passes in part over territory of another State, nor is it affected by the fact that the company has established a relay office in such other State. The statute deals with the company, not its agents. The company in this case undertook to transmit the message from one point to another in Virginia and it cannot escape the penalty imposed by statute for its dereliction of duty on the theory that the statute has no extra territorial effect." The same doctrine of this case was reaffirmed in *Tel. Co. v. Hughes,* 104 Va., 240, though that was subsequent to *Hanley v. R. R.,* 187 U. S., 617, in which it was held that where the continuous transportation of goods between two points in the same State passes over a *"route"* a large part of which is outside the State this is interstate commerce.

The case of *Hanley v. R. R.,* 187 U. S., 617, is not in conflict with what is said above. That merely holds that when goods were transported on a through bill of lading from Fort Smith, Arkansas, to Grannis, Arkansas, over-respondent's railroad, a direct route running by way of Spiro, Indian Territory, a total distance of 116 miles, of which 52 miles are in Arkansas and 64 miles in Indian Territory, this is interstate commerce and the State of Arkansas cannot interfere in opposition to a regulation of Congress. This case certainly does not justify the extraordinary proposition sought to be built upon it that it puts it in the power of any State or telegraph company to destroy the right of the State to regulate intrastate commerce whenever it can by any device, however unnecessary, divert transportation or transmission of a telegram through another State. It is admitted here that this message could have been sent entirely in North Carolina more directly from Greenville to Rosemary, but it is alleged that it was contrary to the defendant's business methods to do so.

In *R. R. v. Leibengood* (Kansas), 28 L. R. A. (N. S.), 985, it was held that where the line passes from one point in a State to another point in the same State, but a part of the route passes over the territory of another State, this is interstate commerce. This case (1910) has there full citation of authorities, an examination of which will show that when the route necessarily passes over the territory of another

SPEIGHT *v.* TELEGRAPH CO.

State this is interstate commerce, but none of them hold that in a case like this where both points are in the same State, and there is a line of railroad or of telegraph between those points which can be used, that it becomes interstate commerce because the corporation sees fit to arrange its method of transportation or of transmission so as to make a wide detour through another State and then back into this State.

Most certainly we cannot concur in the proposition "But if the purpose was apparent to avoid the doctrine as to mental anguish as applied in this State and to place itself under the doctrine of the Federal courts, this alone would not be unlawful, and if such an intent could be declared contrary to law, it would not subject the defendant to liability as motive, intent, or purpose, however reprehensible, not connected with some wrongful. act cannot be the subject of a civil action." It is not a question of making the defendant company indictable or liable to a civil action in transacting its business by sending it through another State and then back into this State, but whether it can by so doing oust the jurisdiction of this State over intrastate commerce which was reserved to it when in the compact at Philadelphia in 1787 the States agreed to confer upon the Federal Government jurisdiction over interstate commerce, but reserved to themselves jurisdiction over intrastate commerce and all other matters not expressly .conceded to the Federal Government.

The tenth amendment reads as follows: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." The power over interstate commerce conferred on the Federal Government is in Art. I, sec. 8, clause 2, as follows: "To regulate commerce with foreign nations and among the several States, and with the Indian tribes." The line between "State's rights" and Federal rights has often been the subject of dispute, and has not yet been clearly marked and run in every particular. There is, unfortunately, still a "twilight zone," but it is beyond dispute that while the Federal Government has control over *interstate* commerce the State has never granted it control over *intrastate* commerce, and when the transaction is between two points in the same State and there is a continuous road or railroad or telegraph line between those points in good condition, capable of being used, transportation and transmission between those points cannot be made interstate commerce by the company's method of doing business, "when the purpose is apparent to avoid the doctrine as to mental anguish as applied in this State and to place itself under the doctrine of the Federal court." If such methods were permissible, the line between State's rights and Federal rights is not that drawn by the Constitution of the United

Greenville, N. C., to Rosemary, N. C., via Weldon..................................................................67 miles
Greenville, N. C., to Richmond, Va., via Weldon, N. C.,.............................. 147 miles
Richmond, Va., to Norfolk, Va............................................................................... 90 miles
Norfolk, Va., to Rosemary, N. C., via Weldon, N. C.................................... 85 miles

322 miles

States but is nullified by the fraudulent purpose of the corporation to evade the lawful jurisdiction of the State which incorporated the defendant, gave it the right to do business here, and protects it and its officials and its property from violence. This doctrine would make the pecuniary interest of a money-making corporation supreme and the powers of the people in governing the State under its own laws (within the limits of the Federal and State Constitutions) entirely secondary to the evasive and fraudulent conduct of a private corporation. Surely the State authority cannot be made "null and of no effect" in that manner. The creature that the State has made cannot be more powerful than its creator, like another Frankenstein.

The establishment of relay offices in another State in order to evade the laws of this State, or even if only to facilitate its business, is not a "necessary part" of the transmission of the message, except to the extent that it may avoid the jurisdiction of the State court, or possibly be some economy in the transmission of the message. Certainly the defendant could not evade the 25-cent limit prescribed by the statute of this State for a message between two points and charge in lieu thereof the rate for a message from Greenville, N. C., to Richmond, Va., plus the rate from Richmond, Va., to Norfolk, plus the rate from Norfolk, Va., to Rosemary, N. C., thus making three messages out of one. This demonstrates that there is but one message in law and that is from Greenville, N. C., to Rosemary, N. C., for which the telegraph company can charge only the State limit of 25 cents for ten words, and subject to the State law for damages for negligence in the transmission of said message.

It may be that the error was made by the operator at Greenville, N. C., or by the operator at Rosemary, N. C. No one knows, but the liability of the company is the same and is not less because it saw fit to send the message by such a remarkable roundabout way. It is therefore possible and probable that in the multitudinous and circumlocutory manner of handling this message the error may have been made at some point outside the State.

Besides, the order setting aside the verdict as a matter of law was erroneous, for it found necessarily as a matter of fact that this method of sending the message out of the State, relaying it at Richmond and again at Norfolk, and then back into the State, was not for evasion, whereas the defendant having a direct, continuous line between Greenville and Rosemary, one-tenth of the distance, and requiring only one relay at Weldon, the burden was on the company to show at least that this was not done to evade the jurisdiction of the State, whose laws give damages for negligence in a case like this, from which the company is exempted if it can make this an interstate message by this device.

Moreover, the General Assembly, taking notice of this custom which the defendant has adopted, enacted chapter 175, Laws 1919, "To prohibit telegraph companies from converting intrastate messages into interstate messages," which provides that "Proof of the sending of any message from one point in this State to another point in this State shall be *prima facie* evidence that it is an intrastate message," and it was for the defendant to rebut this *prima facie* case.

There was error in setting aside the verdict. If the first issue had been material there was evidence to sustain the finding of the jury. The ground on which the court set the verdict aside and entered a nonsuit was because it held that upon the face of the evidence this was an interstate message, which we do not think was correct. But even if the finding upon the first issue was set aside, the other two issues left standing (as well as upon the finding of the first issue), the judgment should be entered in favor of the plaintiff, and the case must be remanded for that purpose.

Reversed.