# WESTERN UNION TELEGRAPH COMPANY, v. POSTON.

## CERTIORARI TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 293.   Argued October 20, 1920.—Decided June 6, 1921.

1. A telegraph company is not subject to a common-law liability for negligent delay in the delivery of a message while its system was in the exclusive possession and control of the Government and being operated by the Postmaster General, pursuant to the Joint Resolution of July 16, 1918, c. 154, 40 Stat. 904, and the Proclamation of July 22, 1918, 40 Stat. 1807. P. 664. *Missouri Pacific R. R. Co.* v. *Ault, ante,* 554.

2. The provision of the proclamation for continuing operation of the telegraph systems through their officers and employees in the names of their respective companies, subject to the orders of the Postmaster General, did not make the companies the operating agents of the United States, and so render them liable for such negligence, nor did the Postmaster General's Order, of like effect, dated August 1, 1918. P. 665.

3. The contract of October 9, 1918, between the Postmaster General and the petitioner did not make the company liable for negligence under government operation, but merely provided indemnity. P. 666.

4. Omission of Congress to provide a remedy against the Government in such cases would afford no ground for holding the telegraph company liable. P. 667.

107 S. E. Rep. 516, reversed.

THE case is stated in the opinion.

Mr. *Rush Taggart* and Mr. *Francis R. Stark*, with whom Mr. *P. A. Willcox*, Mr. *F. L. Willcox* and Mr. *Henry E. Davis* were on the brief, for petitioner.

Mr. *Philip H. Arrowsmith*, with whom Mr. *Alva M. Lumpkin* was on the brief, for respondent.

*The Solicitor General* filed a brief on behalf of the United States.

· *Mr. Wm. M. Silverman* and *Mr. Joseph P. Tolins,* by leave of court, filed a brief as *amici curiæ.* '

MR. JUSTICE BRANDEIS delivered the opinion of the court.· ·

The Supreme Court of South Carolina (107 S. E. Rep. 516) affirmed a judgment of the trial court against the Western Union Telegraph Company for damages resulting from negligent delay in delivering an intrastate message sent October 2, 1918. Its telegraph system was at that time in the exclusive possession and control of the Government and was being operated by the Postmaster General pursuant to the joint resolution of Congress of July 16, 1918, c. 154, 40 Stat. 904, and the proclamation of the President of July 22, 1918, 40 Stat. 1807. The state court declared that, while the action and the judgment recovered therein were in form against the Western Union Telegraph Company, yet, in effect, they were against the Postmaster General; that in suing the company the plaintiff had pursued the course directed by the President's proclamation and confirmed by the contract dated October 9, 1918, between the Postmaster General and company concerning compensation; and that since under this contract the Postmaster General would have to pay any judgment rendered against the company, the entry of judgment would not deprive it of property without due process of law. This court granted a writ of certiorari; 253 U. S. 480. Whether the company can be held liable is the only question presented here. ··

Our decision must depend primarily upon the authority conferred by Congress in the joint resolution which provided:

"That the President during the continuance of the present war is authorized and empowered, whenever he shall deem it necessary for the national security or defense, to supervise or to take possession and assume control of any telegraph, telephone, marine cable, or radio system or systems, or any part thereof, and to operate the same in such manner as may be needful or desirable for the duration of the war . . . *Provided*, That just compensation shall be made for such supervision, possession, control, or operation, to be determined by the President."

Under this resolution the President might, doubtless, have limited his function to mere supervision of the telegraph and telephone systems leaving them in the possession and under the control of the companies. But the resolution also empowered him "to take possession and assume control " of the systems; and this he did, (*Dakota Central Telephone Co. v. South Dakota*, 250 U. S. 163, 183, 185) the proclamation declaring:

"I . . . do hereby take possession and assume control and supervision of each and every telegraph and telephone system, and every part thereof, within the jurisdiction of the United States, including all equipment thereof and appurtenances thereto whatsoever and all materials and supplies. . . .

"From and after twelve o'clock midnight on the 31st day of July, 1918, all telegraph and telephone systems included in this order and proclamation shall conclusively be deemed within the possession and control and under the supervision of said Postmaster General without further act or notice."

In conferring upon the President power "to take possession and assume control " of the telegraph systems the resolution adopted language identical with that which had been employed in the Act of August 29, 1916, c. 418, 39 Stat. 619, 645, pursuant to which the railroads were brought under federal control. See *Missouri Pacific R. R.*

*Co.* v. *Ault, ante,* 554. We held there that the supplementary legislation known as the Federal Control Act did not impose liability upon the company, and that, since the Government was operating the property, the railroad company could not be held liable under the established principles of the common law governing liability. These principles are equally applicable here.

In respect to telegraph systems there was no supplementary legislation similar to the Federal Control Act; so that the argument mainly relied upon by plaintiff in the *Missouri Pacific Case* is not made here. But it is contended that the proclamation, the order of the Postmaster General of August 1, 1918, and the contract between him and the company concerning compensation authorized suit against the company as the operating agent of the Government in the same way that the Federal Control Act authorized suit against the Director General. We find in them no basis for such liability.[1] Obviously neither proclamation, order, nor contract could create a liability not authorized by the resolution of Congress on which they rest. Nor did they attempt to do so.

(a) The provision in the proclamation relied upon to establish the liability is this:

"Until and except so far as said Postmaster General shall from time to time by general or special orders otherwise provide, the owners, managers, boards of directors, receivers, officers, and employees of the various telegraph

---

[1] This view has been taken also by state courts. *Canidate* v. *Western Union Telegraph Co.,* 203 Ala. 675; *Western Union Telegraph Co.* v. *Glover,* 17 Ala. App. 374; *Western Union Telegraph Co.* v. *Davis,* 142 Ark. 304; *Mitchell* v. *Cumberland Telephone Co.,* 188 Ky. 263; *Fos er* v. *Western Union Telegraph Co.,* 205 Mo. App. 1; *Western Union Telegraph Co.* v. *Conditt,* 223 S. W. Rep. 234 (Tex. Civ. App.); *Western Union Telegraph Co.* v. *Robinson,* 225 S. W. Rep. 877 (Texas Civ. App.). See contra, *Witherspoon & Sons* v. *Postal Telegraph & Cable Co.,* 257 Fed. Rep. 758; *Spring* v. *American Telegraph & Telephone Co.,* 86 W. Va. 192.

and telephone systems shall continue the operation thereof in the usual and ordinary course of the business of said systems, in the names of their respective companies, associations, organizations, owners, or managers, as the case may be."

This provision is in no way inconsistent with holding that the President took possession of and operated the telegraph systems as distinguished from taking over the companies and operating them. The companies were not made the operating agents of the United States. The officers of the companies were to operate the properties for the United States and it was to be done "in the names of their respective companies."

(b) The Postmaster General's Order No. 1783, dated August 1, 1918, was of like effect. It merely directed that:

"Until further notice the telegraph and telephone companies shall continue operation in the ordinary course of business through regular channels. . . . All officers, operators and employees . . . will continue in the performance of their present duties, reporting to the same officers as heretofore and on the same terms of employment."

(c) The contract of October 9, 1918, between the Postmaster General and the Western Union, did not purport to make the company liable. It merely provided indemnity. The provision relied upon is this:

"The Postmaster General shall pay, or save the owner harmless from, all expenses incident to or growing out of the possession, operation and use of the property taken over during the period of Federal control. He shall also pay or save the owner harmless from all judgments or decrees that may be recovered or issued against, and all fines and penalties that may be imposed upon it by reason of any cause of action arising out of Federal control or anything done or omitted in the possession, operation, use or control of its property during the period of Federal

control, except judgments or decrees founded on obligations of the owner to the Postmaster General or the United States."

This provision is substantially the same as that inserted in the compensation agreement entered into between the Director General of Railroads and the railroad companies.[1]

It is urged that telegraph companies should be held liable because otherwise those using the system would be without remedy for losses suffered thereby. Whether this is true or whether under the Tucker Act the sender of a message would have a remedy in the Court of Claims or in a Federal District Court we have no occasion to consider in this case.[2] If Congress has omitted to provide adequately for the protection of rights of the public, Congress alone can provide the remedy.

*Reversed.*

---

[1] See Form A, October 22, 1918, for "Agreement between the Director General of Railroads and the  .  .  .  Company," Bulletin No. 4 (Revised) pp. 39, 47, § 4, Par. *i*.

[2] In *Heil* v. *United States,* 273 Fed. Rep. 729, a petition under the Tucker Act for damages arising from failure to transmit a prepaid cable message over the Commercial Cable Company's lines was held by Learned Hand, D. J., on demurrer to state a good cause of action. See also discussion in Senate, June 10, 1919, vol. 58, Cong. Rec., p. 920.