13636

INGRAM v. HUGHES *ET AL.*

(169 S. E., 425)

*Messrs. Francis R. Stark, Nelson & Mullins* and *John D. Nock,* for appellant,

4

*Mr. R. E. Hanna,* for respondent,

May 10, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Ward B. Ingram, acting as the agent of his wife, Mrs. Ward B. Ingram, respondent herein, filed with Western Union Telegraph Company at its office at Cheraw, S. C., a message which directed the agent of the telegraph company at Anderson, S. C., to pay to Louise Belk at Anderson College, Anderson, S. C., $10.00, and on the same sheet was a message to Louise Belk in these words: "Mother seriously ill, come at once." The message was filed at 8 o'clock a. m., of Sunday the 10th day of November, 1929. It was received by Thrift Hughes, a substitute operator for Mrs. M. C. Hughes, the regular operator and manager of the office at Cheraw. That part of it which directed the transfer of the money was promptly sent and received; that part of it which was intended to apprise Louise Belk of the illness of her mother was never sent. The route by which the message went was by relay to Charlotte, N. C.; thence to Atlanta, Ga.; thence to Anderson, S. C.

Plaintiff brought action to recover damages, actual and punitive, for the alleged negligent, willful, and wanton conduct of defendants in not sending that part of the message which was intended to apprise Louise Belk of the illness of her mother.

The defendant Western Union Telegraph Company, by way of answer, sets up as defenses: General denial; that this being an interstate message there can be no recovery for mental anguish, nor for punitive damages; that if the Act

of the Legislature of South Carolina, now embodied in the Code Civil Law of S. C. 1932 as Section 8553, known as the Mental Anguish Act, permits such recovery, the Act is unconstitutional, and that if the Act of May 13, 1919 (31 St. at Large, p. 651, § 1), now embodied in the Civil Code of Laws of South Carolina as Section 8545, be so construed as to require the transmission of the message in suit to be as a matter of fact and regarded as a matter of law, an intrastate message, then such Act is unconstitutional; that Congress having assumed charge of regulating the field of interstate communication by telegraph its control thereof is exclusive and State laws or regulations are inoperative therein; that the message in suit was delivered to and accepted by defendant subject to the terms of its standard message contract, viz., that defendant should not be liable for mistakes or delays in the transmission or delivery of unrepeated messages; that the message which was filed at Cheraw traveled by defendant's duly established routings which were of force at that time, and had the message relating to the illness of plaintiff's mother been sent, it would necessarily have been relayed through Charlotte, N. C., hence was an interstate message; that defendant's standard form of message contract was established and filed with the Interstate Commerce Commission before, and became effective as of July 13, 1921, and was duly authorized and approved by the Interstate Commerce Commission; that by reason of the provisions of said contract defendant could in no event, if liable at all, be liable for more than the sum therein named; that the sender was bound by the terms of the contract as set out on the sending forms.

The case was tried by Judge Sease with a jury, and plaintiff had a verdict for $750.00 against the Western Union Telegraph Company.

At the close of the testimony for plaintiff the defendant moved for directed verdict as to mental anguish and punitive damages in favor of both defendants, which motion

was refused. When the verdict was rendered a motion for new trial was made on behalf of the telegraph company and was refused. That defendant has appealed from the judgment entered on the verdict.

Plaintiff made a motion to dismiss the appeal, which was refused, and plaintiff gave notice of intention to appeal from the order refusing the motion, but the appeal does not appear to have been perfected. At any rate, it was not presented to this Court, and is therefore taken to be abandoned.

The main appeal is presented in twelve exceptions, but not so many questions are necessary to be decided. Appellant's attorneys, in their brief, classify the matters for determination this way:

## MAJOR QUESTION

Did not the Court err in refusing to hold as a matter of law that the message in suit was an interstate transaction?

Point 1. Is the provision in a Western Union Telegraph Company's sending form that "transfer of the money and transmission of the message together constitute one transaction" a valid stipulation?

Point 2. In a case in which money was transferred by a telegraph company from one point in South Carolina to another point in the same State by way of Charlotte, N. C., and Atlanta, Ga., and the accompanying message was not transmitted, but if transmitted would have followed the same routing, is the unsent message interstate commerce and subject to the Acts of Congress and the decisions of the Federal Courts with respect thereto in a suit in South Carolina for a failure to deliver?

Point 3. Are Sections 8545, 8546, and 8547, Code of Laws S. C. 1932, as applied to the message in suit, unconstitutional and void as being in contravention of the Commerce Clause of the Federal Constitution, and likewise unconstitutional and void as being in violation of the due process clause of the Fourteenth Amendment?

## Minor Questions

These relate to recovery for mental anguish and punitive damages. It is admitted that if the message sued on is one in interstate commerce there can be no recovery for mental anguish or for punitive damages.

Was the message directing the transfer of the money, ■ and that apprising Louise Belk of the illness of her mother, one transaction?

At the time of the argument of this appeal the reaction of the mind of the writer of this opinion was to the effect that there were two transactions; that relating to the money, and that relating to the mother's illness. A more mature consideration of the matter, and study of the evidence and exhibits, has led to a different conclusion.

The sending form used by the Western Union Telegraph Company is filed with the Interstate Commerce Commission and is approved by that body. The form used for the transfer of money contains also a space for a message. The plaintiff introduced in evidence in the case Exhibit A, which is the sending form so approved by the Interstate Commerce Commission, and used in this case. On it appears, among other notations of date, time, etc., these two items:

"Pay to Miss Louise Belk

"Anderson College, Anderson, S. C.

"Ten Dollars and no cents ($10.00)"

"Message to be delivered with money:

"Mother seriously ill, come at once.

"Mrs. W. B. Ingram, Cheraw, S. C."

That part of the message transferring the money was promptly sent and received; that part which was intended to apprise Miss Belk of the illness of her mother was never sent. Here was one transaction, separated into paragraphs on one sheet. The proper understanding of the purpose of the sending of the first paragraph which transferred the money required the transmission of the second part which

apprised of the illness of the relative. Can the negligent failure of the telegraph operator to send the last paragraph convert into two transactions that which was physically but one? The contention of plaintiff is that that part of the message which was not sent, remained in the office, was a separate affair and thus became an intrastate transaction. If one files for transmission to one in New York a message pertaining to a business transaction, and the operator carelessly omits from it a word or a phrase which leaves the message meaningless, it could hardly be argued that there were two transactions, and the failure to send all of the message converted those words not sent into a separate and intrastate transaction.

The form upon which the message was written contains this stipulation: "Transfer of the money and the transmission of the message constitute one transaction." These forms likewise contain a provision regulating liability on an unrepeated message. The Supreme Court of the United States held in regard to the last-mentioned stipulation, in the case of *Western Union Telegraph Company v. Priester*, 276 U. S., 252, 48 S. Ct., 234, 235, 72 L. Ed., 555, that: "By Section 1 of the Interstate Commerce Act [49 U. S. C. A. § 1], it is provided that * * * messages received by telegraph companies for transmission may be classified into 'repeated, unrepeated * * * and * * * other classes * * * and different rates may be charged for the different classes of messages.' The established rates for unrepeated messages thus became the lawful rates and the attendant limitation of liability became the lawful condition upon which messages might be sent." Citing numerous authorities.

By parity of reasoning the stipulation that the transfer of the money and the transmission of the message together constitute one transaction is valid and binding, and is decisive of this question. See *Southern Exp. Co. v. Byers*, 240 U. S., 612, 36 S. Ct., 410, 60 L. Ed., 825; L. R. A., 1917-A,

197. We conclude that the message as filed constituted but one transaction.

Was the message in suit one in interstate commerce? That part of the message which transferred the money was sent by way of Charlotte, N. C. It is not questioned that if that part relating to a relative's illness had been sent it would have followed the same route.

In the case of *Missouri Pacific R. R. Co. v. Stroud,* 267 U. S., 404, 45 S. Ct., 243, 244, 69 L. Ed., 683, the action was brought in a State Court of Missouri, under a statute of that State, to recover a penalty for alleged discrimination in furnishing cars. The question of the applicability of the State law arose because, while the lumber in question was to be transported from a point within that State to another point within the State, it was transported to its destination by a route partly without the State. It was declared to be a transaction in interstate commerce and that the statute did not apply. Mr. Justice Butler, for the Court, said: "Respondent did not attempt to designate any route, intrastate or interstate, and there is nothing to show that he expressed or had any preference in respect of the route. * * * It was shown that the shipment would have moved by that route" (interstate). "It is elementary and well settled that there can be no divided authority over interstate commerce, and that the Acts of Congress on that subject are supreme and exclusive."

See, also, *Pacific Coast S. S. Co. v. Board R. R. Com'rs* (C. C.) 18 F., 10.

If, then, that part of the message which was not sent would have followed the route of that which was sent by way of Charlotte, it would have been in interstate commerce, unless there is some special thing taking it out.

In *Berg v. Western Union Telegraph Co.,* 110 S. C., 169, 96 S. E., 248, it was held: "A telegram received by the telegraph company at Charleston, S. C., for transmission to Ridgeland, S. C., which was sent to Savannah, in Georgia,

where it was relayed and then transmitted to Ridgeland, was an interstate message within Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379, as amended [49 U. S. C. A. § 1], * * * providing the Act shall not apply to the transmission of messages by telephone, telegraph, or cable wholly within one State."

In the case of *Son v. Western Union Telegraph Company,* 115 S. C., 520, 106 S. E., 507, it appears that a telegram was filed at Batesburg, S. C., to be transmitted to Graniteville, S. C., 38 miles distant. It was relayed to Charlotte, N. C. It was held, quoting syllabus: "A telegraph message between two points in the State, unnecessarily transmitted through another State, is an interstate message and not subject to State law permitting damages for delay of death message, preventing receiver from attending relative's funeral." We quote also from the body of the opinion, the following: "The crucial point in the case is whether this was an interstate or an intrastate message. In the case of *Western Union Telegraph Co. v. Speight,* 254 U. S., 17, 41 S. Ct., 11, 65 L. Ed., 104, the facts were very similar to these. * * * The jury found that the message was sent out of North Carolina into Virginia, for the purpose of fraudulently evading liability under the law of North Carolina, and gave the plaintiff a verdict. The presiding Judge then set the verdict aside 'as a matter of law,' and ordered a nonsuit. But on appeal the Supreme Court of the State [178 N. C., 146, 100 S. E., 351], set aside the nonsuit, and directed that a judgment be entered on the verdict. Mr. Justice Holmes, who delivered the opinion of the Court, said: 'We are of opinion that the Judge presiding at the trial was right, and that the Supreme Court was wrong. Even if there had been any duty on the part of the telegraph company to confine the transmission to North Carolina it did not do so. The transmission of a message through two States is interstate commerce as a matter of fact. * * * The fact must be tested by the actual transaction. * * * The Court be-

low did not rely primarily upon the finding of the jury as to the purpose of the arrangement, but held that when, as here, the termini were in the same State, the business was intrastate unless it was necessary to cross the territory of another State in order to reach the final point. This, as we have said, is not the law. * * * *If the mode of transmission adopted had been unreasonable as against the plaintiff, a different question would arise; but in that case the liability, if it existed, would not be a liability for an intrastate transaction that never took place but for the unwarranted conduct and the resulting loss." "*

In the case of *Brown v. Western Union Telegraph Company,* 119 S. C., 175, 112 S. E., 117, it is held, quoting syllabus: "Where a message between Charleston and Aiken was transmitted by the company through Atlanta, it is an interstate message and there can be no recovery for mental anguish or punitive damages for delay in its delivery." There was a verdict for plaintiff for actual and punitive damages. In the body of the opinion it is said: "Upon the authority of *Berg v. Telegraph Co.,* 110 S. C., 169, 96 S. E., 248, *Son v. Telegraph Co.,* 115 S. C., 520, 106 S. E., 507; *Telegraph Co. v. Speight,* 254 U. S., 17, 41 S. Ct., 11, 65 L. Ed., 104, and *Telegraph Co. v. Poston,* 256 U. S., 662, 41 S. Ct., 598, 65 L. Ed., 1157, the judgment of the Circuit Court is reversed."

But respondent urges that these cases do not apply because Section 8545, Code Laws S. C. 1932, expressly declares that where the filing point and the receiving point of a message are both within the State it shall be as a matter of fact, and regarded as a matter of law, an intrastate transaction.

There can be no doubt that the State has the right to regulate commerce within its borders, provided it is done in such manner as not to interfere with or impose a burden upon interstate commerce, a field in which the federal government has under constitutional power and congressional

action entered and assumed exclusive jurisdiction. So, if there be direct and *practical* lines between points within the State, we see no reason why the State should not direct their use by agencies wholly within the State and wholly controlled by the State. When, however, the State law comes in contact with a transaction in the realm of interstate commerce, it must yield to the federal authority. The Act now embraced in the Code of Laws as Section 8545 recognizes this principle. It does not undertake to say arbitrarily that every message with both termini within the State shall be sent wholly within the State. It only commands that the message shall be confined to a route wholly within the State when that route is *practical*. It does not undertake to define the use and application of the word practical. It is reasonable to assume that it is used in the sense of being practicable, feasible. In such sense it excludes the idea that the Legislature intended to say that a line, or lines, composed of poles and wires over which it might be *possible* eventually to transmit a message even though in doing so vexatious delays, trouble, and extra expense be incurred is practical, and must be used. If such was the intent of the Legislature, it would make the Act a burden on interstate commerce in the field of transmission of information by telegraph, in which the federal government has assumed exclusive control, because the public is entitled to equal and uniform service, and if the supposed message could be more promptly, safely, and correctly sent by a route in part without the State, it would be the duty of the telegraph company to adopt the interstate route, notwithstanding the State law. The real purpose of the statute was to meet a condition which had arisen out of the custom by telegraph companies of sending messages by interstate routes for the purpose of being protected, in case of suit, against recovery for mental anguish and punitive damages, which protection is furnished by the rule of the Federal Courts. If its regulation is practicable and can .be enforced without a trespass on the fields of interstate com-

merce in the transmission of intelligence within State lines, we do not see why it is an infringement of the constitutional provisions invoked against it in this case. The remedy under this Act may not be by suit on the message, but, as suggested by Mr. Justice Holmes in *Telegraph Co. v. Speight, supra:* "If the mode of transmission adopted had been unreasonable as against the plaintiff, a different question would arise, but in that case the liability, if it existed, would not be a liability for an intrastate transaction that never took place but for the unwarranted conduct and the resulting loss."

For instance, let us suppose that there is an entirely feasible and practical route, or line between two points in the State, over which a message may be transmitted with all of the facility, promptness, and safety it could be sent over an interstate route, and the sender of a message directed that it be sent over the intrastate route, and the telegraph company arbitrarily and willfully sent it over an interstate route and delay and loss followed; can it be said that the telegraph company would not be liable in the State Court under the statute?

Is it, however, true that if there be no such practical and feasible intrastate route and the telegraph company in pursuance of its lawful obligation to transmit the message by the quickest and safest route adopts the interstate route that it renders itself liable under the State law if there be delay and for loss? In other words, does the statute, Section 8545, apply to this case? We think from a study of the evidence that the only reasonable deduction which can be made from it is that there was no direct and practical (practicable) route between Cheraw and Anderson wholly within this State, over which the message in suit could have been sent. The only witness for the plaintiff in the effort to show that there was such a route relied on his repeated assertion, principally. He had not been in the service of the defendant company in the space of twenty years.

The uncontradicted testimony, save that of the witness referred to above, is that the only means of transmitting this message wholly within the State was by a way wire from Cheraw to Camden and from Camden to Columbia; there was also a direct wire from Cheraw to Columbia leased to the Seaboard Air Line Railway for its exclusive use for its railroad purposes. It appears from the evidence that it is impractical to handle general messages over the way wire between Cheraw and Camden and Camden and Columbia. If other messages were going over these way wires, it would be necessary to wait till they were through with, and it would be necessary to send service messages through Charlotte, N. C., and Atlanta, Ga., to get them through. In the meantime all the other traffic over these lines would be held up, resulting in expense, delay and congestion of traffic. Naturally, under such conditions the danger of mistakes in the transmission of the message would be increased. It is patent that such a mode of transmission does not constitute the practical and feasible route which we think the statute, Section 8545, meant when it spoke of a direct and practical route.

If the unsent part of the message in suit had been transmitted, it would, without doubt, have followed the route by way of Charlotte and Atlanta which the part that transferred the money took, and of necessity would partake of the nature of that part as a transaction in interstate commerce.

Respondent places reliance upon the case of *Phillips v. Atlantic Coast Line Railway Co.*, 160 S. C., 323, 158 S. E., 274, 276, 76 A. L. R., 415, in support of its contention that Section 8545 is not open to the view that it is unconstitutional, as a burden upon interstate commerce, and interference with Federal Control in an exclusive field. We do not so understand the opinion in that case, which was written by Mr. Justice Stabler. The learned Justice said: "And, referring to the contention that the Congress, by creating the Interstate Commerce Commission and giving to it a large measure of control over interstate commerce, withdrew

from the State all power in respect to regulations of a local character, said: "This proposition cannot be sustained. Until specific action by Congress or the Commission, the control of the State over these incidental matters remains undisturbed.'" He then considers the rulings of the Courts and the congressional action thereabout, and says: "We find in these provisions of the Act, however, no specific regulations as to the liability of a carrier for injury to an interstate passenger and no provision from which it can reasonably be inferred that Congress intended to exclude State regulation of that matter." Therefore, he held that that action was governed by the rules and practices of the State Courts.

It is not open to argument that the Congress has entered and taken control of the field of interstate commerce in its relation to transmission of information by wire, and that its control is exclusive.

Our conclusion is that the message in suit is one in interstate commerce. It was therefore error not to grant the motion for directed verdict in favor of appellant as to mental anguish and punitive damages.

The judgment of the Court below is reversed, and the case remanded for new trial.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

MR. JUSTICE CARTER concurs in result.