ABRAHAM D. COVERT, Respondent, *v.* JOHN P. CRANFORD et al., Appellants.

One who does an act, lawful in itself, upon the land of another, under the authority of the owner, is not liable in damages to the proprietor of adjoining lands for consequential injuries remotely resulting from the act, not naturally to be anticipated and flowing from occult causes which could only be conjectured by men of science, or disclosed by actual experience.

Defendants, under and pursuant to a contract with the city of Brooklyn, laid a conduit on lands belonging to the city. The conduit line crossed

a stream which supplied a pond on plaintiff's premises that furnished water power for his mill. In building the conduit across the stream the water was temporarily diverted. After the work was completed and the bed of the stream restored to its original state, the water passed by underground drainage through the earth into the channel or trench dug for the conduit, and so plaintiff's pond was substantially drained and his water power destroyed. In an action to recover damages, *held*, that defendants were liable for damages sustained by plaintiff caused by the interruption of the flow of the stream during the time they were engaged in constructing the conduit across it; but were not liable for the subsequent injury caused by the conduit; that for this the city, the owner of the land, that directed the construction of the conduit, was alone liable.

(Argued March 1, 1894; decided March 13, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries to a pond belonging to plaintiff, alleged to have been caused by excavations made by defendants in the construction of an aqueduct.

The facts, so far as material, are stated in the opinion.

*Jesse Johnson* for appellant. The defendants never were liable so long as they properly performed their contract, except for injuries that resulted from their negligence or their inefficiency. (*Mayor, etc.*, v. *Cunliff*, 2 N. Y. 165.) There is nothing to show that the plaintiff suffered any actionable loss during the time the defendants were engaged in the construction of the aqueduct across the valley of James brook. (*Bloodgood* v. *Ayres*, 108 N. Y. 400; *Village of Delhi* v. *Youmans*, 45 id. 362; *Pixley* v. *Clark*, 35 id. 527; *Van Wycklen* v. *City of Brooklyn*, 118 id. 427; Washb. on Ease. [4th ed.] 210, 363; *Ellis* v. *Duncan*, 21 Barb. 230; *Goodale* v. *Tuthill*, 29 N. Y. 466; *Queen* v. *Met. Board*, 3 B. & S. 710.) The defendants clearly were not liable for any loss of rental

or injury to the plaintiff after they had completed the work on the portion of the conduit line affecting the mill and water privileges of the plaintiff. (*Hause* v. *Cowing*, 1 Lans. 288 ; *Swords* v. *Edgar*, 59 N. Y. 28 ; *Walsh* v. *Meade*, 8 Hun, 384, 391 ; *Wolf* v. *Kilpatrick*, 101 N. Y. 146 ; *Mayor, etc.*, v. *Cunliff*, 2 id. 165 ; *Brown* v. *C. & S. R. R. Co.*, 12 id. 486 ; *People* v. *Livingstone*, 27 Hun, 105 ; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98, 109 ; *Tallman* v. *M. E. R. Co.*, 121 id. 119 ; *Whitmore* v. *Bischoff*, 5 Hun, 176 ; *Colrick* v. *Swinburne*, 105 N. Y. 503 ; *Durvey* v. *Mayor, etc.*, 26 Hun, 120 ; *Matthews* v. *D. & H. C. Co.*, 20 id. 427.)

*Benjamin W. Downing* for respondent. The exception taken to the refusal of the court to charge as requested by defendants' counsel, "That the plaintiff has a full and complete remedy against the city of Brooklyn," was not well taken. (*Crocher* v. *Bragg*, 10 Wend. 260 ; *Arnold* v. *Foote*, 12 id. 330.) The exception to the refusal of the court to charge, "That the defendants were only liable in this action for such damage as was suffered by the plaintiff down to the time the defendants were shown to have finished the work on that portion of the conduit affecting the property of the plaintiff," was not well taken. (*Matthews* v. *D. & H. C. Co.*, 27 Hun, 427 ; *Atkins* v. *Boardman*, 2 Metc. 457 ; *Bliss* v. *Greeley*, 45 N. Y. 671.) The diversion of the water of the plaintiff's pond by the digging and building of the conduit was a legal injury for which the plaintiff is entitled to compensation and damages. (*Garwood* v. *N. Y. C. & H. R. R. R. Co.*, 17 Hun, 356 ; *Clinton* v. *Meyers*, 46 N. Y. 511 ; *Galway* v. *M. R. R. Co.*, 128 id. 133.) The proposition that that the defendants were liable, if liable at all, for the rental value of the plaintiff's property to the time of the commencement of this action is a clear and undisputed proposition of law. (*Pappenheim* v. *M. E. R. R. Co.*, 128 N. Y. 444 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 116 ; *Plate* v. *N. Y. C. & H. R. R. R. Co.*, 37 id. 472.)

ANDREWS, Ch. J.   The defendants in the year 1890, under a contract with the city of Brooklyn, constructed a conduit running in an easterly and westerly direction, connecting certain ponds at Massapequa, Long Island, with the Ridgewood reservoir, in aid of the water supply of the city.   The conduit line crossed the valley of James brook, a small stream running northerly and southerly, which supplied a pond of the plaintiff on his premises about a mile below the point where the conduit crossed the stream, which furnished the water power for a small mill on the plaintiff's land, which had existed there for more than fifty years.   The defendants excavated a trench for the conduit from twelve to twenty-two feet in depth. The evidence tends to show that as the excavation approached the channel of the stream the water in the plaintiff's pond began to lower, and that since its completion the pond has been substantially drained so as to destroy the water power, and the plaintiff has suffered a serious injury.   In building the conduit across the stream the water was temporarily diverted from the channel.   But after the conduit was covered and the bed of the stream at the point of crossing was restored to its original state, the pond as has been stated did not retain the water flowing thereto, and the evidence justifies the inference that the water of the pond passed by underground drainage through the earth into the channel of the conduit and was thus lost to the plaintiff.   It has been held that such an injury is actionable.   In *Dickinson* v. *Canal Co.* (7 Exch. 282) the defendant sunk a well on its premises and pumped therefrom large quantities of water to supply its canal, whereby water that had already reached a surface stream was diverted by percolation from the plaintiff's dam, and the court decided that an action for damages would lie.   In the case of *Van Wycklen* v. *City of Brooklyn* (118 N. Y. 427) the Second Division of this court assumed, if it did not decide, that the same principle applied in the case of driven wells which sucked away the waters from a running stream after they had been collected therein.   It is not necessary in this case to consider whether there are qualifications of this rule.

(See remarks of POLLOCK, C. B., in *Dickinson* v. *Canal Co.*, and opinion of Lord WENSLEYDALE in *Chasemore* v. *Richards*, 7 H. of L. Cases, 380.) The point here is whether the defendants, the contractors for building the conduit, are liable to the plaintiff.

It is conceded that the conduit was laid upon the lands of the city of Brooklyn under a contract with the city. The contract is not in evidence, but the court on the trial ruled, upon the request of the defendants, that the jury could not infer that the conduit was constructed contrary to the terms of the contract. The plaintiff acquiesced in this ruling, and the fact inferrible from the evidence is that the defendants in constructing the conduit, and in the manner of executing the work, were complying with their contract with the city. We think the defendants are liable for any injury sustained by the plaintiff, resulting from the actual interruption of the flowing of the stream during the time they were engaged in constructing the conduit across it. It was a patent violation of the property rights of the lower proprietors, not justified by any necessity so far as the record shows. The maxim *aqua currit et debit currere*, says DENIO, J., in *Bellinger* v. *N. Y. C. R. R. Co.* (23 N. Y. 42), "absolutely prohibits all individuals from interfering with the natural flow of water to the prejudice of another riparian owner upon any pretense, and subjects him to damages at the suit of any party injured, without regard to any question of negligence or want of care." In constructing the conduit the defendants were not mere servants or laborers. They doubtless had a discretion and could exercise an independent judgment in the method by which the conduit should be carried under the bed of the stream. They knew, or were bound to know, that they had no right to cut off the flow of water in the stream as against riparian owners below. A wrongdoer cannot interpose the direction of another to excuse a plain and palpable wrong. But the injury sustained during the temporary interruption of the flow of the stream, while the conduit was being laid across it, is comparatively of small

moment. The main question is whether the contractors are liable for the injury caused by the conduit in draining the pond in the manner before stated. Upon this point we are of opinion that for this injury the owners of the land, by whose direction the conduit was constructed, are alone liable. There was evidence that the defendants commenced the work of building the conduit in September, 1890, and completed it the following November. The jury might have so found. This action was commenced in May, 1891. The trial judge in substance ruled that the defendants were liable for the injury caused by the draining of the pond up to the commencement of the action, on the theory that as the defendants constructed the conduit, and made the trench into which the water of the pond found its way by underground percolation, they were liable, and that it was immaterial whether the injury was suffered during the time they were engaged in performing the contract or after its completion. The rule upon which the case was submitted to the jury would render the defendants liable for recurring damages for all time, or until the cause of the damage was removed, or the city shall condemn the water rights of the plaintiff. We think such a principle has no foundation in the law. The construction of the conduit was, in itself, a perfectly lawful act. It became actionable as to the plaintiff for reasons which lay outside of the realm of observation, and from causes which the defendants had no reason to anticipate. The conditions happened to be such that the conduit did operate to drain the water of the plaintiff's pond, a mile away. It would be an unreasonable rule which should subject a person doing an act on another's premises, under his authority, lawful in itself, to damages to the proprietor of adjacent lands, for consequential injuries, remotely resulting from the act, not naturally to be anticipated and flowing from occult causes which, to put it in the strongest way, could only be conjectured by men of science or disclosed by actual experiment. When the owner of land, in such case, ascertains that injury is being done, he may be bound to act. In the case of nuisance

it is said, that " a party who has erected the nuisance will some-times be answerable for its continuance after he has parted with the possession of the land. But it is only where he con-tinues to derive a benefit from the nuisance as by devising the premises or receiving rent" (Bronson, J., in *Mayor, etc.*, v. *Cunliff*, 2 N. Y. 174), or where he has conveyed with cove-nants for the continuance of the nuisance. (*Waggoner* v. *Jermaine*, 3 Den. 306.) The plaintiff's remedy is, we think, exclusively against the city as the owner of the lands on which the conduit was laid, and the real author of the wrong for the consequential damages from the draining of the pond. The rule which would make the contractors liable would sub-ject innocent parties, who cannot control and have no power to interfere with the conduit, to liability for acts such as the owners of property may lawfully direct and which involved injury to another, only because it turned out that the water of the pond communicated by hidden ways through the strata of the earth with the trench constructed by the defendants.

The judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.