PHEBE A. SMITH, Respondent, v. JOHN P. CRANFORD and Another, Appellants.

*Diversion of water from a stream — damages therefor — proof under a plea of accord and satisfaction — accord executory.*

A person is entitled to the natural flow of the water in a stream upon his land, and if another first diverts the water from such stream and then permits it, in a dirty and polluted condition, to find its way back into the stream upon such land, the owner is entitled to recover the amount of the loss which he has sustained thereby.

To sustain the plea of an accord and satisfaction the agreement must be completely executed, and an accord without satisfaction or an accord partly executed cannot be successfully pleaded as a defense to an action.

If an agreement was not an accord and satisfaction, but an accord executory, tender of performance is not equivalent to execution for the purposes of a defense to an action.

APPEAL by the defendants, John P. Cranford and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 29th day of September, 1894, upon the report of a referee.

*Jesse Johnson*, for the appellants.

*Fred. Ingraham* and *James W. Treadwell*, for the respondent.

BROWN, P. J.:

The defendants, from September to November, 1890, were engaged as contractors, with the city of Brooklyn, in constructing upon the city's land an aqueduct in aid of the city's water supply.

The aqueduct crossed a small stream of water which flowed southerly through the plaintiff's lands, and upon which the plaintiff had a trout preserve.

The preserve consisted of four ponds constructed by deepening and widening the stream and building dams, and were together about 350 feet in length.

The referee found that the water of said stream was pure, clear and cool, and well adapted to the breeding and raising of trout, and that in September, 1890, said preserve was stocked with about 600 trout three years old, 500 two years old, 2,500 one year old, and 3,000 spawns, and was producing a yearly income of $150.

That in constructing said aqueduct the defendants fouled and polluted the waters of said stream by discharging therein earth, oil and other substances, so that when it reached plaintiff's lands it was unfit for use and destructive to the health and life of the trout in the preserve.

That defendants also diverted the water of said stream from plaintiff's preserve and diminished the supply, thus rendering the stream, as it flowed through said preserve, sluggish and unsuitable to raising trout, and that in consequence of the pollution and diversion of said stream the trout in the preserve were made sick, pre-

vented from spawning and a large number died, and the loss sustained by reason of the aforesaid acts was assessed at the sum of $850.

The defendants' liability for the result of the diversion and pollution of the stream is settled by the case of *Covert* v. *Cranford* (141 N. Y. 521).

In that case the court quotes with approval from Judge Denio's opinion in *Bellinger* v. *N. Y. C. R. R. Co.* (23 N. Y. 42), that the maxim "*Aqua currit et debet currere* absolutely prohibits all individuals from interfering with the natural flow of water to the prejudice of another riparian owner, upon any pretense, and subjects him to damages at the suit of any party injured, without regard to any question of negligence or want of care."

The finding of the referee as to the diversion of the stream and pollution of the waters has ample support in the evidence.

The aqueduct crossed the stream a few hundred feet north of the plaintiff's property, and intercepted the flow of its water at that point. It was, at that point, about eighteen feet deep, and the ground was marshy and full of springs, and to get rid of the water in the aqueduct defendants had two large pumps, which pumped the water out upon the surface, whence it found its way back to the stream in a muddy, roily condition, carrying with it, on its surface, a great deal of oil from the machinery.

The plaintiff was entitled to the natural flow of the water. The defendants' acts first diverted it from the stream and then permitted it, in a dirty and polluted condition, to find its way into the plaintiff's ponds. The amount of loss sustained was clearly proved, and, in the assessment of the damages, the referee kept well within the rule applied in *Covert's* case.

It appeared that in September, 1890, the plaintiff commenced an action against the defendants to restrain them from interfering with said stream or doing anything to diminish the supply of water flowing to the plaintiff's ponds or to impair the quality thereof, and that while said action was pending an agreement between the parties was entered into, which provided:

1. That the action should be discontinued.

2. That all dams belonging to plaintiff which had been or might thereafter be damaged or destroyed by the defendants should be

replaced and repaired by them and kept in good condition until the completion of the work about them.

3. That defendants were liable to pay plaintiff the full value of trout killed during the progress of the work, and that plaintiff should receipt therefor in full from time to time as she should be paid therefor.

4. That defendants should pay plaintiff three dollars per day from September 8, 1890, until the completion of the work in and about said stream.

5. That defendants should pay fifty dollars for the costs and disbursements of the suit.

Upon the execution of this instrument, fifty dollars for costs was paid to the attorneys, but no other payment has ever been made under it to the plaintiff.

The defendants claimed the agreement was a bar to the maintenance of this action, and offered to prove that no demand had ever been made upon defendants for payment for dead fish, and that defendants had made a proper tender of performance of the agreement to the plaintiff, which testimony was excluded.

The agreement was not an accord and satisfaction. It was an accord executory. Tender of performance has never been held for the purpose of this defense to be equivalent to execution.

Accord without satisfaction or accord partly executed cannot be successfully pleaded as a defense.

To sustain a plea of accord and satisfaction the agreement must be completely executed. (*Brooklyn Bank* v. *DeGrauw*, 23 Wend. 342; *Noe* v. *Christie*, 51 N. Y. 270; *Kromer* v. *Heim*, 75 id. 574.)

The referee properly ruled that the agreement was executory and was not a bar to the maintenance of this action.

None of the other exceptions are well taken, and the judgment must be affirmed, with costs.

PRATT and DYKMAN, JJ., concurred.

Judgment affirmed, with costs.