Caroline Wilks, as Administratrix of the Estate of Joseph Wilks, Deceased, Respondent, *v.* New York Telephone Company et al., Appellants.

Tort — nuisance — telephone wires — liability in tort — action for death through coming in contact with telephone wire attached to building in close proximity to high-power wire of another company — owner of wire not liable where it had been transferred to it by a grantor and at the time and for some months prior to the accident had been in possession of Federal government — grantor which erected and conveyed wire liable if it placed it in a position to make it a menace to others — damage proximate result of original wrong — insufficiency of evidence to show that it created a nuisance.

1. Liability in tort must by its nature be based upon proof of injury caused by a wrongful act in which the person held responsible in some manner joined either personally or through agent or representative.

2. In an action to recover for the death of plaintiff's intestate through his coming in contact with a telephone wire alleged to have been erected across his premises by defendant Federal Company and, before the accident, transferred to defendant New York Company, where the allegations of the complaint are sufficient to charge the first company with the erection and the second with the maintenance of a nuisance and there is evidence sufficient to establish that at the time of the accident the wire was attached to a fixture on the roof of an adjoining building in such close proximity to high-powered wires of an electric company that it constituted a potential menace to life and was a nuisance, but it also appears that at the time of the accident and for five months prior thereto all of the wires and equipment of the New York Company had been in the possession of the United States government and controlled, maintained and operated by it, having been taken over for governmental purposes, the New York Company can be held responsible neither for maintaining nor for participating in the maintenance of a nuisance. It did not erect the nuisance nor was it shown that it knew of its existence, except as such knowledge may be inferred from constructive notice, and it made no voluntary conveyance of any kind; the property was taken temporarily *in invitum* from it. Hence, there can be no finding of affirmation of continuance of the nuisance during the time it was maintained by the government.

3. The Federal Company, however, which erected the wire and voluntarily conveyed it to the New York Company, thereby affirming the latter's right to use it as it then existed, may be held liable for the death of intestate if the evidence sustains the charge that it erected the wire in such manner as to make it a menace to others. The damage is the proximate result of the original wrong when express or implied authorization to continue existing conditions forms a connecting link and the interposition of the agents of the United States government creates no new factor which breaks the chain of cause and effect for those agents had the same rights and were under the same duties as the original grantee.

4. An examination of the evidence, however, shows that it is insufficient to sustain a finding that the Federal Company erected the nuisance. The evidence shows almost beyond possible doubt that the upright to which the wire was attached belonged to it and that thereafter the electric company placed a cross-piece thereon as a support for its heavily charged wires. Furthermore, there is no evidence as to when or how the telephone wire was placed upon the upright. It may have been placed there after it had relinquished control. The fact that the span of the wire leading from such support was of unusual length might have justified a finding that it created a condition of danger and a nuisance but the evidence of the relative positions of the light and power wires and the telephone wires during the period before the Federal Company conveyed its property is too vague to permit inference of dangerous proximity. Moreover, the case was tried upon the theory that it had *erected* a nuisance and no question was submitted to the jury as to whether it had maintained a nuisance after notice.

*Wilks* v. *New York Telephone Co.*, 215 App. Div. 792, reversed.

(Argued June 7, 1926; decided July 9, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 28, 1925, affirming a judgment in favor of plaintiff entered upon a verdict.

*Thomas Penney, Jr., Charles T. Russell, Olin T. Nye* and *Otto M. Buerger* for New York Telephone Company, appellant. The New York Company cannot be held liable for the death of the plaintiff's intestate under the established principles of law governing liability because

such death was not the proximate result of a continuance of a nuisance upon the New York Company's property by the New York Company. The Buffalo General Electric Company alone created and continued the nuisance which caused the death of the plaintiff's intestate. (*Magee* v. *New York Telephone Co.*, 213 N. Y. 232.) The New York Company cannot be held liable for the death of the plaintiff's intestate under the established principles of law governing liability because such death was not the proximate result of a continuance of a nuisance upon the New York Company's property by the New York Company. For a period of four months prior to and at the time of the accident to the plaintiff's intestate, the New York Company's property was under the sole possession and control of the United States government and out of the possession and control of the New York Company. (*Dakota Telephone Co.* v. *South Dakota,* 250 U. S. 163; *No. Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135; *Hatcher & Snyder* v. ¦*Atchison, T. & S. F. Ry. Co.,* 258 Fed. Rep. 952; *Haubert* v. *B. & C. R. Co.,* 259 Fed. Rep. 361; *McFeena's Admr.* v. *Paris Home Telephone, etc., Co.,* 190 Ky. 299; *Taylor* v. *Western Union Telegraph Company,* 207 Mo. 145; *Missouri Pacific Railroad Co.* v. *Ault,* 256 U. S. 554; *North Carolina R. R. Co.* v. *Lee,* 260 U. S. 16; *Davis* v. *Cohen & Co.,* 268 U. S. 638; *Alabama & Vicksburg R. Co.* v. *Journey,* 257 U. S. 111; *Dahn* v. *Davis,* 258 U. S. 421.) Assuming that the United States government can be charged with a continuance of a nuisance while it had the possession and control of the New York Company's property, this continuance by the United States government never received such sanction or confirmation on the part of the New York Company, in the form of a lease or deed with covenants, that the New York Company can be charged with having participated in the continuance after it parted with the possession. (*Roswell* v. *Prior,* 12 Mod. 635; *Cheetham* v.

*Hampson,* 4 T. R. 318; *Blunt* v. *Aiken,* 15 Wend. 522; *Waggoner* v. *Jermaine,* 3 Den. 306; *Brady* v. *Weeks,* 3 Barb. 157; *Mayor of Albany* v. *Cunliff,* 2 N. Y. 165; *Covert* v. *Cranford,* 141 N. Y. 521; *Slavitz* v. *Morris Park Estate,* 98 Misc. Rep. 317.)

*Parton Swift* for Federal Telephone and Telegraph Company, appellant. The Federal Company cannot be held liable on the ground that it maintained a nuisance created by the Electric Company as matter of law. (*Trapp* v. *McClellan,* 68 App. Div. 362; *People* v. *Townsend,* 3 Hill, 479; *Barring* v. *Commonwealth,* 2 Duval [Ky.], 95; *Brown* v. *McAllister,* 39 Cal. 573; *State* v. *Rankin,* 3 S. C. 438.) On the record the verdict cannot be sustained on the ground that the Federal Company is liable for maintaining a nuisance created by another party, that issue not being before the court. (*Piper* v. *N. Y. St. Rys. Co.,* 185 App. Div. 184; *Martin* v. *Petit,* 117 N. Y. 118.) The creator of a nuisance is not liable for damages caused thereby subsequent to the conveyance or transfer of the property constituting the nuisance by the creator to another party, unless the creator thereafter continued to receive some benefit from the continuance of the nuisance, or has conveyed with covenant or warranty for the continued use and enjoyment by the grantee of the property constituting the nuisance as it existed at the time of the conveyance or transfer. (*Blunt* v. *Aiken,* 15 Wend. 522; *Waggoner* v. *Jermaine,* 3 Den. 306; *Mayor, etc.,* v. *Cunliff,* 2 N. Y. 165; *Covert* v. *Cranford,* 141 N. Y. 521; *Hanse* v. *Cowing,* 1 Lans. 288; *Fealey* v. *Bull,* 163 N. Y. 397.) The act of the United States government, under its war-time powers, in taking possession and control of the telephone system and wires of the New York Company on July 31, 1918, and being in such control at the time of the accident, prevents a recovery against the Federal Company. (*Baggott* v. *Southern Railway Co.,* 300 Fed. Rep. 337.)

*La Fay C. Wilkie* for respondent.   The wires were a trespass on the property of Wilks and constituted a nuisance.   (*Andrews* v. *Delhi Tel. Co.*, 36 Misc. Rep. 23; 66 App. Div. 616; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Long Island* v. *Garvey*, 159 N. Y. 334; *Heeg* v. *Licht*, 80 N. Y. 579; *Butler* v. *Frontier Telephone Co.*, 186 N. Y. 486; *Lamming* v. *Galusha*, 135 N. Y. 239; *Sweet* v. *Perkins*, 196 N. Y. 482.)   The erection and fixing of wires on the Sherwood Building by the Federal Telephone Company in close proximity to high-powered wires of the Buffalo General Electric Company is amply sustained by the evidence and the verdict of the jury fully warranted. (*Hart* v. *Hudson Bridge*, 80 N. Y. 622; *Wittemann* v. *Sands*, 238 N. Y. 434; *Ga Nun* v. *Palmer*, 216 N. Y. 603; *Sharp* v. *Erie*, 184 N. Y. 100; *Fagan* v. *Atlantic C. L.*, 220 N. Y. 303; *Lalor* v. *City of N. Y.*, 208 N. Y. 431; *Carlisle* v. *Norris*, 215 N. Y. 400; *Lee* v. *Southern Pacific*, 116 Cal. 97; *Nugut* v. *Boston R. R. Co.*, 90 Maine, 62; *Arrowsmith* v. *Nashville*, 57 Fed. Rep. 165; *St. Louis* v. *Curt*, 28 Kan. 622; *Penn. R. R. Co.* v. *Ellett*, 132 Ill. 654.) The defendant New York Telephone Company is liable for its failure to abate the nuisance after it acquired the property of the Federal Telephone Company, February 27, 1918.   (*Timlin* v. *S. O.*, 126 N. Y. 527; *Junkman* v. *Tilyou Co.*, 213 N. Y. 404; *Lusk* v. *Peek*, 132 App. Div. 426; 199 N. Y. 546; *Connell* v. *Jankelson*, 163 App. Div. 592; *Hirsch* v. *Radt*, 228 N. Y. 100; *Irvine* v. *Wood*, 51 N. Y. 224; *McDonald* v. *Dundon*, 242 Mass. 229; *Simmons* v. *Everson*, 124 N. Y. 319.)   The fact that the Federal government took over the telephone lines on July 31, 1918, and that the death of Wilks occurred on November 30, 1918, from negligent construction of the telephone wire long prior to the 1st of March, 1918, in no wise relieves the Federal Company and the New York Company from its negligence in failing to abate the nuisance while it was in its possession and under its control.   (*Cumberland Telephone Co.* v. *Lawrence*, 271 Fed. Rep. 89.)

LEHMAN, J.   The plaintiff's intestate, Joseph Wilks, was killed on November 30th, 1918, by accidental contact with a telephone wire.   The wire had been strung, a number of years before the accident, across the premises occupied by the decedent from the roof of a building known as the Sherwood Building to a point beyond some railway tracks on the other side of the decedent's premises.   The wire broke during a windstorm.   The fallen wire was originally erected and owned by the Federal Telephone and Telegraph Company.   That company had transferred to the New York Telephone Company all its wires and equipment at midnight of February 28th, 1918, nine months before the accident.   It was stipulated at the trial that "all the wires, poles, equipment and all of the property of the New York Telephone Company with the exception of its securities was taken over by the United States government on the 31st day of July, 1918, pursuant to a proclamation of the President of the United States and of the Congress of the United States, and that the same were in the possession of, controlled and maintained and operated by the United States government acting through and under the Postmaster-General, from midnight of the 31st day of July, 1918, to midnight of the 31st day of July, 1919."   The current which ordinarily passes through a wire erected for use in connection with a telephone system is not sufficient to cause serious shock or injury to any one who comes in contact with such wire.   Plaintiff's intestate was killed because at the time he touched the wire a current of 2,200 volts was passing through it from a high-powered wire of the Buffalo General Electric Company.

The plaintiff has recovered a judgment for damages of $25,000 against the New York Telephone Company and the Federal Telephone and Telegraph Company.   The judgment places liability for the death of plaintiff's intestate upon two corporations which at the time of that death were not using and had no control of the instru-

mentalities which caused it. Though the New York Telephone Company still had title to the telephone system which the Federal Company had conveyed to it, it cannot be held liable for negligent operation of that system while in control of the United States government. (*Western Union Telegraph Co.* v. *Poston,* 256 U. S. 662.) The Federal Company may certainly not be held liable for negligent use by another of an instrumentality which the Federal Company no longer owned or controlled. Liability in tort must by its nature be based upon proof of injury caused by wrongful act in which the person held responsible in some manner joined either personally or through agent or representative.

The complaint herein charges in effect that the Federal Telephone and Telegraph Company erected wires across the premises leased by the deceased without permission or right or easement and was a trespasser on such premises; that the wires were erected in such close proximity to highly-charged electric wires that they created a dangerous situation and constituted a nuisance. It further charges that the New York Telephone Company accepted the wires and went into possession of the same and continued to maintain and operate the same long prior to July 1st, 1918, with full knowledge that said wires had been erected and were being maintained in a dangerous manner. These allegations are sufficient to charge one defendant with the wrongful erection of a nuisance and the other defendant with wrongful maintenance of the nuisance. If these charges were proven, each defendant would of course be responsible for proximate consequences of its own wrong; but question would still remain whether the proximate consequences of the wrongs charged or proven could extend to the death of the plaintiff's intestate occurring after both the defendants had ceased to use, and had lost control of, the wires which constitute the alleged nuisance, and when the defendants no longer had power or right to abate it.

The evidence is sufficient to establish that at the time of the accident the wire which caused death was attached to a fixture on the roof of the Sherwood Building in such proximity to the high-powered wires of the Buffalo General Electric Company that it constituted a potential menace to life and was a nuisance.  This condition existing at the time of the accident may be regarded as the final link in the chain of causation leading to the death of the plaintiff's intestate.  For several months previous to the accident the United States government alone had control of the wire and power to maintain or change the conditions which constituted a nuisance.  The question which the court must decide on this appeal is whether the wrongful acts charged against the defendants or either of them are so connected with the condition maintained by the government that in the chain of causation the later condition may be fairly regarded as the result of these acts.

At least so far as concerns the New York Telephone Company, it seems clear both upon principle and authority that it is without responsibility.  It is not charged with the erection of the alleged nuisance.  The theory of the complaint, as well as the theory upon which the case was tried and submitted to the jury, is that the Federal Telephone and Telegraph Company erected the nuisance. The fault of the New York Telephone Company, if any, is that it took possession of the nuisance when the Federal Telephone Company transferred the wires to it and has maintained the nuisance after it had notice of its dangerous character.  No actual notice was shown, but the jury was permitted to infer constructive notice from the fact that this defendant was in control of the wires for a period of five months, during which inspection made with reasonable care might have disclosed any dangers created by the situation.  It may have been negligent in failing to discover and remedy this situation, but the plaintiff elected to try the case upon the theory of nui-

sance, not negligence, and in any event the defendant's negligence ceased when the control of the wires passed out of its control. From that time on it owed no duty to the plaintiff's intestate or to the public. The death of plaintiff's intestate occurred not through the negligence of the New York Telephone Company while in possession of the wires but through the continued maintenance of the wires in the same condition by officers of the United States government, upon whom the duty devolved of using reasonable care to discover and remedy a dangerous condition. These considerations seem to dictate the conclusion that the defendant New York Telephone Company was not liable upon the theory of nuisance, if at the time of the fatality it was not responsible for the continued maintenance of the nuisance.

A somewhat similar situation was presented in the case of *Virginian Railway Company* v. *Mullens* (271 U. S. 220). In that case there was evidence that the Virginian Railway Company purchased in 1907 a railroad constructed by another railway company. An embankment and track in the bed of a stream tended to obstruct and divert the current in such way as to constitute a nuisance. The court stated that the evidence " affirmatively and indubitably precluded a finding that the defendant constructed them or did more than use them as an integral part of a completed road which it had purchased as a going concern from a prior owner." It continued such use until the Federal government took possession and assumed control of the railway on December 28th, 1918. The Supreme Court of the United States held that it was not liable for injuries occasioned by the continued maintenance of the nuisance during the period of Federal control. " The maintenance and use during that period were exclusively in the hands of Federal agents. If a duty rested on any one to make any change in them it rested on the Federal

agents; and if maintaining and using them without change was a wrong against the plaintiff it was a wrong committed by those agents, for which no liability attached to the defendant." It is sought to distinguish that case from the one under consideration because there the continued maintenance of the alleged nuisance was by Federal agents acting under the Director-General, and here its continued maintenance was by Federal agents acting under the Postmaster-General. Argument is made that the language of the statutes providing for such control is not the same in each case and a different liability was intended for wrongs committed by the different classes of Federal agents. That argument need not be analysed. Regardless of the intent of Congress in regard to remedy for wrong committed by the Federal agents, it has been authoritatively determined that neither telegraph company (*Western Union Telegraph Co.* v. *Poston,* 256 U. S. 662) nor railroad company (*Missouri Pacific Railroad Company* v. *Ault,* 256 U. S. 554) may be held responsible for wrongs committed by the Federal agents in control of corporate property.

May we nevertheless find that the New York Telephone Company participated in the maintenance of the nuisance by such agents, so that responsibility may be predicated upon such participation? In numerous cases in this and other jurisdictions, most of which are based ultimately upon the reasoning or authority of *Roswell* v. *Prior* (12 Mod. 636) one who has erected a nuisance has been held liable for damages caused by the maintenance of the nuisance even after control and possession have passed to another. (See Joyce on Law of Nuisances, section 454.) In some cases the decision has been based upon a finding that the grantor has affirmed, and derives benefit from, the maintenance of the nuisance by either demising the property constituting a nuisance and receiving rent or by conveying with a covenant of warranty for quiet enjoyment. (*Waggoner* v. *Jermaine,* 3 Denio, 306; *Covert*

v. *Cranford,* 141 N. Y. 521; *Mayor of Albany* v. *Cunliff,* 2 N. Y. 165.)   Here the New York Telephone Company made no voluntary conveyance of any kind; the property was taken temporarily *in invitum* from it.   Hence there can be no finding of affirmation of continuance of the nuisance during the time it was maintained by others; and the New York Telephone Company did not erect the nuisance.   It did not even know that it ever maintained a nuisance, except as such knowledge may be inferred from constructive notice.

In the case of *Virginian Railway Company* v. *Mullens* (*supra*) the Supreme Court has noted the distinction between the cases in which, on the grounds we have alluded to, liability has been imposed upon one who has erected a nuisance, for damages caused by its maintenance when in control of another and a case where similar liability is asserted against one who merely maintained it until it was taken away by the sovereign authority.   It is nevertheless urged that in this State such distinction is not recognized.   It is true that in the case of *Timlin* v. *Standard Oil Co.* (126 N. Y. 514) this court has held that a lessee of premises on which a nuisance has been erected by the landlord is liable for damages caused by the maintenance of the nuisance if with knowledge, actual or constructive, the lessee relet the premises.   It is to be noted, however, that the court stressed the voluntary character of the reletting as an affirmative ground of liability.   "If they chose to relet, they took the responsibility." (See, also, *Junkermann* v. *Tilyou Realty Co.,* 213 N. Y. 404.)

Such cases may not be considered as a determination that in all cases a lessee who has maintained a nuisance remains liable for damages arising even after he has parted with control.   Such a rule would make the lessee liable for damages even after expiration of his term.   All the authorities, judicial or extra judicial, seem to agree that one who maintained a nuisance   but did not erect

it is liable usually only for damages caused by such maintenance. He is not responsible for its continued maintenance after the nuisance has passed into the control of another, unless the lessee voluntarily parted with that control under circumstances from which inference may be drawn that he authorized its continuance or profited thereby. (See, also, Halsbury's Laws of England, vol. 21, page 555.)

The position of the Federal Telephone and Telegraph Company is different. It constructed a telephone system for operation under a public franchise. It was under a duty to the public to use care in the construction of its wires; it was under a similar duty to use care in their maintenance. It voluntarily conveyed its property to the New York Telephone Company. While the deed contains no covenant of quiet enjoyment, it does contain other warranties. The property conveyed was intended for use as a telephone system, and by its conveyance the Federal Telephone and Telegraph Company affirmed the right of the New York Telephone Company to use the system as it then existed. The agents of the United States government taking over the system might exercise the same right of user as the New York Telephone Company. If the property so conveyed included a nuisance which the grantor had erected or had knowingly maintained, though the dangerous condition was created by the act of another, then the grantor may be held liable for damages caused thereafter to a third party through such user. If the evidence sustains the charge that the defendant Federal Company did erect the wire in such manner as to make it a menace to others, the verdict against it must be sustained. The damage is the proximate result of the original wrong, at least when express or implied authorization to continue existing condition forms a connecting link. (*Timlin* v. *Standard Oil Co., supra.*) The interposition of the agents of the United States government creates no new factor which breaks the chain

of cause and effect for those agents had the same rights and were under the same duties as the original grantee.

The evidence in favor of the plaintiff is not, however, sufficient to sustain the charge. It is claimed that the Federal Telephone and Telegraph Company attached the wire to a " horse " or fixture belonging to the Buffalo General Electric Company, and in such close proximity to the wires of that company that a situation of serious danger was thereby created. It is also claimed that the span of the wire from the Sherwood Building to the pole beyond the railroad tracks to which it was attached was of unusual and improper length; that this length of span made a break in the wire probable and intensified the danger created by the proximity of the ordinarily harmless telephone wires to the highly charged wires of the Buffalo General Electric Company. One of the witnesses produced by the plaintiff, an employee of the Buffalo General Electric Company, did testify that on the day after the accident he found that on the roof of the Sherwood Building the telephone wires were attached to the upright of a " horse " belonging to the Buffalo General Electric Company and that the wires of the latter company were attached to a cross-piece on the top of the same horse. His testimony that the upright to which the telephone wires were attached belonged to the Buffalo General Electric Company, if true, would lead to the inference that the telephone wires were placed there with knowledge or notice of the dangerous situation thereby created. His testimony is contradicted even by other witnesses produced by the plaintiff, and photographs taken immediately after the accident, coupled with testimony produced by both sides, show almost beyond possible doubt that the upright to which the telephone wires were attached belonged to the Federal Telephone and Telegraph Company and that the Buffalo General Electric Company some time thereafter placed a cross-piece on top of the upright, connected it to a chimney and placed upon it, the heavily charged wires

used for light and power. For damages caused solely by wrongful act of the Buffalo General Electric Company no liability may be imposed upon these defendants.

Even if, in spite of what seems conclusive refutation, we should hold that the testimony of the employee of the Buffalo General Electric Company yet constitutes some evidence which the jury might be permitted to consider and weigh, the plaintiff's case against the Federal Telephone and Telegraph Company is not materially strengthened, for there is no evidence as to when or how its wires were placed upon the upright alleged to belong to the Buffalo General Electric Company. Uncontradicted testimony shows that, at some time previously, the telephone wires were attached to an upright belonging to the telephone company. The only testimony which purported to show when the fixture present· on the roof at the time of the accident was placed there is based on hearsay and was properly stricken out. It may well be that the telephone wires were placed in the position they were in at the time of the accident on the roof of the Sherwood Building by some third party, and even after the Federal Telephone and Telegraph Company had relinquished its control. It follows that the proof is insufficient to sustain a finding that the Federal Telephone and Telegraph Company erected a nuisance unless the mere fact that the span of the wire leading from the Sherwood Building was of unusual length created a condition of danger.

In spite of the length of the span the wire remained unbroken for years. The wire was not intended to carry a dangerous current. A break would cause no serious danger of injury to person or property, and would, therefore, constitute no nuisance unless the wire came in contact with other wires carrying a much stronger current. There is evidence that such wires of the Buffalo General Electric Company were on the roof of the Sherwood Building for many years. Perhaps during this period and even when the span of telephone wires was erected, the more

highly charged wires were in dangerous proximity to the telephone wires, though not on the same fixture. If so, the jury might perhaps find that an excessively long span created a condition of serious danger and constituted a nuisance, but in this case the evidence of the relative positions of the light and power wires and the telephone wires during the period before the Federal Telephone and Telegraph Company conveyed its property is too vague to permit inference of dangerous proximity.

We have intimated that the Federal Telephone and Telegraph Company might be liable if it conveyed property constituting a nuisance, if it had maintained such nuisance, though it did not create it, but the evidence here is insufficient to show the condition of the roof, fixtures and wires when the defendant conveyed its property or how long the existing condition remained unchanged. Moreover the case was tried upon the theory that the defendant Federal Telephone and Telegraph Company had *erected* a nuisance and no question was submitted to the jury as to whether it had maintained a nuisance after notice.

It follows that the judgment against the Federal Telephone and Telegraph Company should be reversed and a new trial granted, with costs to abide the event, and the judgments against the New York Telephone Company should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch., CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; POUND and CRANE, JJ., vote to affirm judgment against Federal Telephone and Telegraph Company.

Judgment accordingly.